WILLIAMSON v. EASTERN BUILDING AND LOAN ASSOCIATION, OF SYRACUSE, N. Y.

1. RES JUDICATA—BUILDING AND LOAN ASSOCIATIONS.—The questions raised here relating to (1) the proper construction of the contract; (2) lack of funds in defendant's treasury to pay plaintiff's demands, and (3) that the construction of the contract as contended for by plaintiff would be *ultra vires,* are *res judicata* by the former decision in this case—54 S. C., 582.

2. CHARGE.—Court did not submit to the jury the construction of the contract, but construed it for them, and properly instructed them to ascertain if the alleged representations were made.

Before KLUGH, J., Darlington, March term, 1900. Affirmed.

Action by Bright Williamson against Eastern Building and Loan Association, of Syracuse, N. Y. The trial Judge charged the jury as follows :

"This is a suit brought by Mr. Bright Williamson, as plaintiff, against the Eastern Building and Loan Association, of Syracuse, N. Y., as defendant. It is a suit, briefly putting it, by this plaintiff on a contract which he sets up and relies upon, and upon which he seeks to recover from defendant. The discussion has taken a very wide range in the argument about the certificates of stock, the conditions and terms of the by-laws and articles of incorporation, and the statutes and decisions of the various courts, as necessarily it must have done in the considering of all the bearings of this case; but after all, when it comes to the decision of the jury, the matter is in a small compass. It is a suit by the plaintiff, Bright Williamson, upon a contract which he sets forth in his complaint, and upon which he claims he has the

right to recover from the defendant; and it is for you to say whether he has that right or not, upon the presentation of the issues that now will be presented to you.

"More fully now, the plaintiff alleges that he became in due process the holder and owner of certain shares of stock in the defendant building and loan association; and he alleges that the terms upon which he took that stock were that he was to pay an admission fee of a certain amount, and then pay instalments on his stock for seventy-eight months— seventy-eight monthly instalments.    He alleges further that the defendant building and loan association agreed with him that upon the payment by him of these seventy-eight instalments, together with the membership fee, it would then repay to him the full amount of $100 upon each and every of the said shares of stock.    He alleges that under that arrangement he took twenty-five shares of stock.    He alleges that he did perform all the conditions and terms of the contract on his part, and that the seventy-eight months have elapsed, the seventy-eight payments have been made, and that he is entitled now to his $2,500—that is to say, $100 for each and every share of stock so held by him.    That is the foundation of the claim that he sets forth in his complaint.    He sets up in the complaint, that some years subsequent to the time of entering into this contract, he borrowed under a distinct and definite agreement with the defendant building and loan association a certain amount of money, and that he pledged as security for the loan which he thus obtained from the defendant, the shares of stock he already held in the association, and that he was bound by the loan to do certain things—that is, to pay the interest and premiums, and that he did pay these charges; and now admits that the defendant is entitled to offset this loan which he procured from it against the amount due on his original contract, to wit: the sum of $2,500; and only claims that the defendant is bound to pay him the balance, after deducting the amount of his loan from the amount of the original contract.    The amount of the loan being $937.50, and deducting that amount from

$2,500, which he claims to be due on his original contract, leaves the sum of $1,562.50, which he claims is now due him from the defendant; and that is what he brings his suit for, together with the interest from the time he alleges it became due and payable, and he was refused payment.

"The defendant does not deny that there was a contract between the plaintiff and defendant; does not deny that he was a stockholder or member of the defendant association, but it sets forth a different contract from that which the plaintiff sets forth. It alleges that instead of the period of seventy-eight months and seventy-eight monthly payments being limited as completing the performance of the contract by the plaintiff, that the contract was that he became a member of the defendant building and loan association, subject to all of its by-laws and rules and regulations, its charter and everything else governing the association; and claims further that under that arrangement he was bound to pay not only a definite, limited number of seventy-eight payments, but was bound to pay any additional payment which would be necessary, taken together with the profits on his payments, to mature his stock to the par value of $100 for each share. That is the position which the defendant takes.

"Now, this case has already passed under the consideration of the Supreme Court of this State after passing through this Court upon another branch of the case; and that Court has construed the character of this contract. With us the point at issue between the two parties as to this view of the case is whether or not it was a definite, limited contract—limited to the payment of seventy-eight instalments by the plaintiff, and the absolute obligation of the defendant arising thereon to pay him $100 a share; or whether it was, on the other hand, a contract by which the plaintiff was to keep on paying until by the books of the association or in some other way—whatever way they arrived at such conclusion—until his shares would arrive at the value of $100 each. The Supreme Court of this State has already held that the certificate of stock and the other matters that enter into the contract, as

specifically set forth in the certificate, are to be taken in connection with whatever representations the defendant actually made at the time the contract was entered into; and if it did make any representations in addition to those matters which led to the making of a different contract from that expressed by its by-laws and its articles of incorporation, that special contract was to govern rather than the general contract which would result from its by-laws and articles of incorporation in connection with the certificate of stock. So, that is the question for you to determine in the first instance, whether or not this defendant did induce the plaintiff by literature, by written or printed representations, or by verbal representations—any representations in addition to those contained in its certificate of stock and by-laws and other matters mentioned in the certificate—to enter into this contract; whether it induced him to believe that it was a contract for a limited number of payments, and that upon the completion of those payments it would be a fulfilment by the plaintiff of his side of the contract, and an absolute obligation on the part of the defendant to pay the amount of $100 a share. And if the evidence in the case satisfies you that the defendant did hold out such representations, then those representations are binding on the defendant and fixes the terms of the contract. I say that is a question for you to determine from the evidence in the case: Whether it was a fixed and limited contract, or whether it was unlimited, as the defendant claims, or limited only by the time that the payments in excess of the seventy-eight, together with the profits, would make by its method of bookkeeping and its calculation the plaintiff's stock worth $2,500.

"Now, the defendant, in addition to its claim that it was an estimated period instead of a definite, limited period, sets up the further defense, that if it had undertaken to make a contract of the character that the plaintiff claims, that is a definite, fixed number of payments, that it would have been acting beyond its powers as a corporation under the laws that existed; and that, therefore, such an act on its part would

have been void—that such a contract would have been void,
as being in excess of the powers it possessed to make.   The
Supreme Court in considering this case has laid down a prin-
ciple which disposes effectually of that contention, when it
says, quoting from another authority, quoting approvingly
and making the opinion its own, as a principle governing in
this case, that where the act is not immoral—where the act
that is alleged to be beyond the power of a corporation is not
an immoral act, nor expressly forbidden by some law—then
the Court will not allow the corporation to come in and claim
that it was *ultra vires,* or beyond its powers.   It is a common
principle of estoppel, as we speak of it in the law, that where
a person has made representations and induced another per-
son to act on those representations, then, unless those repre-
sentations were made by a corporation, and made by it in
violation of good morals which the other side would know
was against good morals, unless made in violation of some
express provision of the law that the other side would be
bound to know, unless it come in those inhibitions, then
although it might be beyond the technical powers of the cor-
poration, yet the Courts would not allow the corporation to
take advantage of its own wrong and defeat the other party,
the plaintiff, of his rights by saying that it was a *void* con-
tract on its part, because it was beyond its powers to enter
into.   So the principle of *ultra vires* cannot enter in this
case.

"The remaining defense which the defendant sets up is
that the plaintiff (although it admits that the plaintiff entered
into the original contract with the defendant) waived the
provisions of that contract—cast them aside—when he en-
tered into a subsequent contract by which he made a loan
with the association.   So that by the defendant's contention,
if you should conclude that the plaintiff did have a definite
contract with the defendant by which after the plaintiff had
made seventy-eight payments he would be entitled to receive
$2,500, still, if you should also conclude that he entered into
the loan contract, the contention of the defendant is that by

entering into the loan contract he waived his rights under the original contract and became bound by whatever changes had been made in the by-laws of the association subsequent to the making of the original contract and up to the time of the making of this loan contract.

"Now, unquestionably, Mr. Foreman and gentlemen, a person may waive a right which he has, especially a right arising out of contract. A man may have any one of you under contract to do some particular thing, to build a bridge or a house by a certain day. He may have you bound by a penalty to do the thing by a particular day, yet he may, although you fail to do the thing, he may waive his rights under the contract and make some other contract with you. And so, in this case, the plaintiff, even though he had the defendant bound by this original contract which he alleges, had the power and right if he chose to waive the benefits accruing to him or the rights growing in his favor out of the original contract, and so release the defendant from the performance of it. Now, where a defendant comes into Court relying on such a defense as that, it is bound to establish the facts necessary to show the truth of the defense; and it is bound to prove by the preponderance of the evidence that the plaintiff did cast aside his rights and benefits which had accrued to him already under the contract; or, in other words, waive them and thereby release the defendant from its performance. Now, in this case, if the defendant has offered evidence, satisfactory to your mind, of a waiver, has shown that the plaintiff did waive his original contract, it constitutes a good defense to the plaintiff's recovery in this case. But it is incumbent on the defendant to show that. The plaintiff is not bound to show anything with reference to that matter unless in reply to anything which the defendant may show as going to establish the waiver. I charge you that where a man has a valid claim against another, he may afterwards pledge that claim to the other party in any transaction—any subsequent transaction—and yet by that act of pledging not waive any right which he may have had

under the original transaction.    The mere act of pledging the shares of stock does not amount to a waiver of any right which the plaintiff had under the original contract.

"Now, Mr. Foreman, I think those are the issues which are presented to you for decision.    If the plaintiff has established his contract, and it does not appear to be an unreasonable or immoral contract, in which case the Court would not allow him to set it up, he is entitled to recover on it, unless the defendant has shown something that would defeat it; and it only remains for you to determine whether or not he has established his contract.    He is bound to prove it by the preponderance of the evidence; and if he has so established it, then it remains for you to determine what your verdict will be in his favor, unless the defendant may have shown some matter which goes to defeat his right.    The plaintiff is suing on a specific, definite claim, which must be the amount which he claims or nothing at all.    He claims that his stock is paid up stock, that he is not suing to recover from the defendant an amount due on stock which was not paid up.    This is not his contention.    But he claims that his stock was fully matured or paid up, and that he is entitled on the terms of the contract to have the full amount due on his contract— less, of course, the offset of the loan which you have heard mentioned.    Now, if he was suing the defendant for the withdrawal value of the shares of stock which had not been already paid up, the defendant would probably not come and offer to allow him to have judgment for whatever you might conclude was due on that unmatured stock, but would take the position—as it would have the right to do—that he could not recover until he had fully complied with the terms of the contract.    But he is suing on what he claims to be fully paid up or matured stock; and, therefore, if he establishes that contention, he is entitled to recover the full amount of his paid up stock.    So your verdict must be in favor of the plaintiff for the full amount he claims, or else in favor of the defendant.    There is no ground for you to give a compromise verdict, to give him a few hundred or a greater

number of dollars, but you must either give the plaintiff the full amount he claims or give a verdict in favor of the defendant.

"So, gentlemen, if you conclude the plaintiff is entitled to recover, your verdict will be in favor of the plaintiff in the sum of $1,562.50, together with interest at seven per cent. from December, 1897. That is what he claims. If you conclude that he is not entitled to recover that amount, then your verdict will be in favor of the defendant. I do not deem it necessary to go into a further discussion of these by-laws; they are really matters more of fact for you, and they have been fully discussed to you. In fact, in the view I take of this càse, the clear, sharply defined question for you, and the only one, is whether or not there was such a contract as the plaintiff claims; and if so, whether anything has been shown by the defendant to defeat that contract.

"So, Mr. Foreman and gentlemen, you may take this case now under these instructions and determine what shall be your verdict. I will say that the requests that have been handed up by the defendant for me to charge I do not deem applicable to the case, in the view that I take, and they are, therefore, refused. * * *"

From judgment on verdict duly entered up, defendant appeals on the following exceptions:

"I. That his Honor erred in overruling the motion made for nonsuit on the following ground: 'That there is no proof of the entire contract. That there has been no introduction of the contract of loan.'

"II. That his Honor erred in leaving to the jury the construction of the written contract of membership and the written contract of loan. It being respectfully submitted that the construction of written instruments is for the Court and not for the jury.

"III. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that the contract is to be governed and construed by the

laws of the State of New York, as the contract was made there and was to be performed there.'

"IV. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that what the laws of New York are, are facts for you to find, and that full faith and credit are to be given those laws under art. IV., sec. 1, of the Constitution of the United States, and sec. 905 of the Revised Statutes of the United States.'

"V. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that if you find that the defendant was incorporated under chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof, that said laws are to be given in this Court the same faith and credit as they have by law or usage in the Courts of New York, in accordance with the provisions of sec. 905 of the Revised Statutes of the United States.'

"VI. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that if you find from the evidence that the defendant was incorporated under chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof, and if you further find that the Courts of New York have construed said laws, thereby holding that a corporation duly incorporated under them was a 'building, mutual, loan and accumulating fund association,' in which all of its members stand on the same footing, each sharing equally in the profits and losses, then I charge you that the same construction is to prevail in this case, under art. IV., sec. 1, U. S. Constitution, and sec. 905 of the Revised Statutes of the United States.'

"VII. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'If you find that the defendant association was incorporated under the chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof, and as the plaintiff contracted with the defendant, then I charge you

that he is bound by such laws, and is not exempt from making the monthly or other stated payments, provided for in the articles of incorporation and by-laws, upon the ground of having made a fixed number of monthly payments, regardless of the fact whether such payments and the earnings of the defendant have brought the plaintiff's stock up to the par value of $100 per share.'

"VIII. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'If you find that the defendant was incorporated under chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof, and if you further find that said statute and amendments were construed by the Supreme Court of New York in a case entitled O'Malley *v.* the People's Building, Loan and Savings Association, then I charge you that the defendant did not possess the power to issue a certificate containing a fixed period of maturity, and it cannot be enforced against the defendant in this Court, as an unconditional promise to pay $100 per share at the expiration of seventy-eight fixed monthly payments, as full faith and credit must be given the laws of the State of New York, under art. IV., sec. 1, U. S. Constitution, and sec. 905 of the Revised Statutes of the United States.'

"IX. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that under the terms of the contract of membership, and the contract of loan, by-laws and charter, the transaction between the plaintiff and defendant does not terminate merely upon making a fixed number of payments, but only when the dues paid in by him with the profits apportioned to his share, make them equal to their par value of $100 per share.'

"X. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that as the plaintiff procured an advance or loan from the defendant, and assigned his stock, as collateral security therefor, he cannot withdraw from the association, as he

contɪacted to remain a member until his stock reaches its par value of $100 per share.'

"X.I. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that it is incumbent on the plaintiff to prove by a preponderance of testimony that the earnings of the defendant has matured his stock, before he can recover judgment against the defendant.'

"XII. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that the plaintiff cannot estop the defendant for what is said on the face of the certificates and literature relative to stock maturing in seventy-eight months, as said statements related to a future fact on which no legal reliance could be placed.'

"XIII. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that one of the elements of an equitable estoppel is, that the party setting it up must have been induced to change his position to his injury by the party against whom it is set up, and if you find what is said about stock maturing in seventy-eight months, would be to the advantage of the plaintiff, then he cannot estop the defendant.'

"XIV. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that as the plaintiff procured the amount borrowed under the by-laws as he alleges, and as his contract of loan made the by-laws and charter a part of said contract, that he is estopped from claiming under them and against them at the same time, and that he is not exempt from making the monthly payments, as they provide until the amount of dues paid in by him, plus his *pro rata* share of the profits, have brought his stock up to its maturity value of $100 per share.'

"XV. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that as the plaintiff has sued on the contract and

clings to the benefits thereof, to wit: the amount borrowed, that he is estopped from setting up any alleged misrepresentations made to him by the defendant which (as alleged) induced him to enter into the contract.'

"XVI. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'If you find that at the commencement of this action that the defendant did not have money in its treasury applicable to plaintiff's claim, then you will find for the defendant.'

"XVII. That his Honor erred in refusing to charge the jury, as requested by counsel for defendant, as follows: 'I charge you that the plaintiff was charged with notice of the provisions and requirements of the articles of incorporation, by-laws and the laws of New York under which the defendant was organized and conducted its operations.' "

*Mr. T. H. Spain,* for appellant, cites: *The contract is to be performed in New York, and must be construed according to its laws:* 56 S. C., 280; 58 S. C., 121; 55 S. C., 120; 3 Ency., 1 ed., 560. *And under facts here it is entitled to have full faith and credit given to these laws:* 53 S. C., 67; 150 U. S., 1134; 172 U. S., 521; 176 U. S., 621; 119 U. S., 519; 147 U. S., 204; 155 U. S., 128; 178 U. S., 1125. *Respondent cannot cling to the benefits of his contract and refuse its burdens:* 46 S. C., 37; 3 Rich. Eq., 281; 4 Strob. Eq., 84; 115 U. S., 441. *We have here an estoppel against an estoppel, which puts the matter at large:* 11 Ency., 2 ed., 392; Big. on Estp., 349; 56 S. C., 513. *Plaintiff covenanted not to sue until there was money in the treasury to pay his demand:* 17 S. C., 413; 148 N. Y., 281; 57 Pac. R., 14. *Appellant's charter was on file in office of Secretary of State, and respondent is charged with notice:* 5 Ency., 1 ed., 326; 178 U. S., 1688.

*Messrs. Boyd & Brown* and *Young &. Young,* contra. *Mr. Brown* cites: *Inducing one to part with his rights by misrepresentation is a fraud:* 1 D. G. M. & G., 691; 19 S.

26—62

C., 402; 61 N. W. R., 523; 2 Pom. Eq. Jur., sec. 899.
*Comity of nations:* Story Con. Laws, sec. 556; 55 S. C., 121.
*A foreign law will not be enforced here if against public
policy:* 37 N. J. L., 35; 91 Me., 406. *As to pleading ultra
vires:* 56 N. E. R., 105; 21 N. E. R., 907; 14 N. E. R., 370;
3 N. E. R., 239; 96 U. S., 341; 46 N. E. R., 1022; 63 N. Y.,
62; 61 N. W. R., 521; 46 At. R., 919; 7 Thom. on Corp.,
sec. 8756. *As to mutuality of membership:* H. L. L. R., 8
App. Ca., 248; H. L. Scotch Ap. Ca., 496; 51 S. C., 424; 54
S. C., 593; 17 App. Div. N. Y., 72; 33 Bar., 109. *As to
waiver:* L. R., 2 H. L., 57; 105 U. S., 359; 28 Ency., 528;
Big. on Estp., ed. 1890, p. 663; 15 S. C., 35. *Amended act
of incorporation does not apply to previous contract:* 1
Thom. Corp., sec. 1010; 104 Fed. R., 643; Thom. Corp.,
secs. 1019, 8757, 8737; 78 N. Y., 159.

April 15, 1901. This opinion was filed, but remittitur
stayed on petition for writ of error to Supreme Court of
United States; but no other orders having been asked for,
the Reporter thinks proper to publish it.

MR. CHIEF JUSTICE McIVER. The plaintiff brings this
action to recover the sum of $1,562.50, besides interest
thereon, alleged to be due him by defendant under a contract,
the terms of which are set forth in the complaint. The
defendant in its answer denies that the contract between it
and the plaintiff was as alleged in the complaint, but was, as
it is alleged to be in the answer, and that, under the terms of
the contract as set forth in the answer, there is nothing now
due to the plaintiff. The case came on for trial before his
Honor, Judge Klugh, and a jury, and a verdict having been
rendered in favor of the plaintiff, and judgment having been
entered thereon, the defendant appeals from such judgment
upon the several exceptions set out in the record. These
exceptions (omitting the first, which has been very properly
abandoned), together with the charge of the Circuit Judge,
will be incorporated by the Reporter in his report of the
case.

Before proceeding to the consideration of the exceptions, we desire to say that all of the material questions presented in this case, except the question of waiver or estoppel, as it is termed in the exceptions, have been conclusively determined, at least so far as the parties to this case are concerned, by the decision of this Court in a previous branch of this case, reported in 54 S. C., 582. The defendant made no effort to have that decision reviewed by any higher tribunal, and, therefore, whether it was right or wrong (though we must say that we think it was entirely right, and that any other conclusion than that then reached would have operated a fraud upon the plaintiff), it must be held absolutely conclusive, so far as the parties to this case are concerned. This Court there held: 1st. That the proper construction of the contract between the parties was that contended for by the plaintiff, and not that contended for by the defendant. 2d. That the contention that because the defendant has no money in its treasury applicable to the claim of the plaintiff, did not defeat plaintiff's cause of action. 3d. That the position taken by defendant, that the contract, if construed to be a contract, fixing a definite time for the maturity of the shares, would be *ultra vires,* could not be sustained. But the question whether the plaintiff had waived his right to insist upon his contract as originally made, by becoming a borrower some time after the plaintiff had received the certificates for the twenty-five shares, the par value of which he is now claiming, was left open; and that, as it seems to us, is the only question which is now open. It is contended, however, by the counsel for the defendant, who is now the appellant here, that the former decision should not be regarded as conclusive here, because the answer of defendant was not before the Court when that decision was made "nor the contract of loan," and that all the questions raised by the pleadings were not before the Court, and consequently could not be passed upon. We think that an examination of the record of the case before the Court at the time of the former hearing will show that

this is a mistake, except so far as the answer is concerned, and that being merely a statement in legal form of the grounds of defense, throws no more light upon the questions involved than the facts which were then before the Court afforded. An examination of the opinion of the Court in the former decision will show that the Court then had before it the terms of the certificates of shares, the "literature" of the association—that is, the printed circulars and leaflets issued by the association, the express promises made by the duly authorized agents of the defendant, the fact that the plaintiff had effected a loan from the defendant, the charter and by-laws of the association, and the fact that defendant did not have in its treasury, at the time when the shares matured (as contended for by plaintiff), the money applicable to plaintiff's claim—and that all these matters were considered and passed upon by the Court under the former appeal, except the question of waiver, as above stated.

Coming, then, to the exceptions, and passing by the first, which, as already stated, was abandoned, we take up the second exception. That exception is based upon a misconception of the Judge's charge, and for that reason must be overruled. The question as to the construction of the contract was not left to the jury. On the contrary, the jury, after having been told how the Supreme Court had construed the contract, were instructed to inquire, as a matter of fact, whether the defendant had, by its agents or by its written or printed "literature," made such representations to the plaintiff as induced him to believe that the contract "was a contract for a limited number of payments, and that upon the completion of those payments it would be a fulfilment by the plaintiff of his side of the contract, and an absolute obligation on the part of the defendant to pay the amount of $100 a share." That was a pure question of fact, which it was the province of the jury to pass upon.

Exceptions 3, 4, 5, 6, 7, 8, all impute error to the Circuit Judge in refusing to charge the several requests therein repeated, in reference to whether this was a New York con-

tract, to be construed according to the laws of that State. These questions were distinctly made under the former appeal, as is shown by the points and authorities of counsel for defendant under the former appeal, at page 589 of 54 S. C., above cited, and, therefore, cannot be renewed here. These exceptions are overruled.

Exceptions 9, 10 and 11 are disposed of by the former decision as above, and must be overruled.

Exception 12 cannot be sustained, for the representations which the jury were instructed to inquire into, were not in reference to a future fact.

As to the 13th exception, we are at a loss to perceive what relevancy such an instruction has to the case as made by the plaintiff. The exception is overruled.

As to exceptions 14, 15, 16 and 17, it seems to us that they are disposed of by what has already been said, and these exceptions are overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.