6615

### THOMPSON v. PIEDMONT MUTUAL INSURANCE CO.

1. PRINCIPAL AND AGENT—NOTICE.—There is evidence in this case to the effect that one while soliciting insurance for the defendant and afterwards, exercised other powers than soliciting agent, that insured had no notice of a change of his relation to the company; afterwards, while soliciting additional insurance for the same company, he was informed by insured that he had taken out additional insurance on property. and from this the jury could infer the defendant had notice of the additional insurance.

2. WHERE A MUTUAL ASSESSMENT INSURANCE COMPANY issues a policy containing a provision that no suit shall be maintained by insured on any claim against it until assessment had been made, or until insured had taken such legal steps as were necessary to compel such assessment, and after loss denies all liability, insured may maintain an action on the policy before bringing an action to compel assessment on policies then liable for their prorata share of loss.

Before KLUGH, J., Chesterfield, Fall Term, 1906. Affirmed.

Action by John Thompson, as trustee for J. E. Williams, against Piedmont Mutual Insurance Co. From judgment for plaintiff, defendant appeals.

*Messrs. Carlisle & Carlisle* for appellant, cite: *Under facts here notice of assessment after fire is not a waiver:* 54 S. C.,

371; Ostrander on Fire Ins., 391, 132.  *Plaintiff should have brought suit to compel assessment before suing on policy:* 18 Fed. R., 14; 19 Fed. R., 201.

*Messrs. R. T. Caston, Edward McIver,* and *Stevenson and Matheson,* contra.  *Messrs. Caston and Matheson* cite: *After defendant denied liability under the policy, plaintiff could sue without taking steps to compel an assessment:* 51 S. C., 547; 36 S. C., 215; 37 S. C., 444; 8 L. R. A., 113; 2 L. R. A., 784, 286; 13 L. R. A., 565; 138 Mass., 392.

August 5, 1907.  The opinion of the Court was delivered by

Mr. Justice Gary.  The following statement is set out in the record:

"This is an action brought by the plaintiff as the trustee of the bankrupt estate of J. E. Williams against the Piedmont Insurance Company.

"The complaint is based upon a policy of insurance in the sum of two thousand ($2,000.00) dollars, and alleges:

"The compliance with all the terms and conditions of the policy and loss of twelve thousand ($12,000.00) dollars on storeroom and goods in Chesterfield County.

"The complaint further alleges that J. E. Williams, the insured, was adjudged bankrupt by the United States Court before this suit commenced.

"In the prayer for judgment, demand is made against the defendant for the sum of two thousand ($2,000.00) dollars and costs.

"The answer admits the execution of policy sued on, and sets up several affirmative defenses, all of which were abandoned at the trial, except two, as follows:

"First. In that after the issuance of the policy, without the knowledge or consent of this defendant, plaintiff took out additional insurance upon the property covered by this policy, in other companies, which said policies were in force, at the time of the fire.

"Second. In that insured agreed in said policy, that no suit or action against this company, for collection of any claim against it, should be sustainable in any Court of law, until assessment had been made against the policies, then liable for their *pro rata* share due on each policy, to pay said claim, and that he would assume the burden of proving affirmatively, as part of his case in chief, that said assessment had been made, and that all the other conditions and requirements of the policy had been complied with, or that he had taken such legal steps as may have been necessary to compel said assessment, if the company should refuse to pay the same; and the defendant had refused, and did refuse, to make an assessment to pay the claim of plaintiff's assignor, J. E. Williams, and that no steps were taken before this suit was brought to compel them to do so."

The jury rendered a verdict in favor of the plaintiff for $2,000.00.

The defendant made a motion for a new trial, upon grounds which were overruled, and afterwards made the basis of its exceptions.

The first assignment of error is as follows:

"Because the verdict was totally without evidence to sustain it, under the charge of his Honor, 'That a mere soliciting agent of the company, without the power to write or deliver a policy, would have no power to receive notice for the company, except as the same would relate to a policy of insurance which he was soliciting at that time—that is, notice of additional insurance;' and also because the said verdict was without facts and evidence to sustain it under the charge of his Honor, 'That a mere soliciting agent, who does nothing but go around and ask people to insure, and take their application, any incidental knowledge he may acquire would not amount to notice to insurance company itself; the error being that all the testimony showed that agent mentioned was merely a soliciting agent, and did not obtain knowledge of additional insurance while soliciting or delivering the policy sued on,

but that such information, if received at all, was received months afterward."

J. E. Williams, the party insured, testified in behalf of the plaintiff as follows:

"Q. You didn't get this insurance policy from Mr. Clark? A. I think the same man. Q. Did not the policy come by mail? A. Of course. Q. Do you mean you got the paper from Mr. Clark? A. I took the insurance from Mr. Clark and the policy came through the mail. Q. What other insurance was there on that property at the time of the fire? A. One in Philadelphia and one in New York. Q. When Mr. Clark was there the last time, did you tell him about the other insurance you had? A. Yes. Q. What was Mr. Clark doing? A. He was talking up for the Piedmont. Q. Did he solicit insurance with you? A. Yes, he said he could let me have a little more insurance, that they did not hardly ever go further than two thousand, but they could put a few hundred more. I told him I had $6,000.00 in insurance, and he said he could give a few more hundred, a little amount, he didn't say the amount. in his company. Q. Did you take it or not? A. No, I told him I would see him later. Q. You paid assessments after Mr. Clark and you were talking that summer? A. Yes. Q. After the fire? A. No; I sent a check after the fire and it was returned. Q. Was that the only one you paid after your last talk? A. No; I paid until the fire and after the fire. Q. When they sent the check back that you sent, was there a letter or anything with it? A. Yes, they said they had sent it through mistake. Q. What reason did they assign for sending it back? A. They said I was not due it; that they had sent it through mistake; that I was not due them any, as my store was burnt."

When recalled for the defendant he testified as follows:

"Q. After you took out this additional insurance, is it not a fact that Mr. Clark came there representing the same company that you had insured in? Defendant objects to

witness proving agency of Clark by the declarations of Clark himself. Q. Is it not a fact that he had the applications of this same company along? A. Yes. Q. And undertook to get you to take insurance in the same company that you had it in before? A. Yes. Q. That was after you took the other insurance? A. Yes. Q. You told him that fact? A. Yes. Q. He solicited insurance for this very company? A. He did. Q. Had you had any notice that he was not representing that company from the company itself? A. No. Q. You made your application through him? A. Yes. Q. And the company issued you a policy? A. Yes. Q. You dealt with him while he was there representing the company? A. Yes. Q. Without any notice that he was not representing the company? A. No."

Opposite the signature of J. E. Williams to his application for insurance, in pursuance of which the policy herein was issued, are these words: "Witnessed and approved by J. B. Clark, agent."

From the foregoing it will be seen that there was testimony to the effect that J. B. Clark was the agent of the insurance company, who solicited insurance from the plaintiff, and through whom he made his application, which was approved by Clark; also, that he not only then, but afterwards, exercised powers other than those of a mere soliciting agent, and apparently within the scope of his employment; and that he received notice from J. E. Williams, while soliciting additional insurance, and exercising the right to determine, in the first instance, whether it was a desirable risk, that Williams had insured the property in two other companies. There was no testimony tending to prove that J. E. Williams had notice of any change of the relations existing between the insurance company and Clark. He therefore had the right to presume that they still continued. *Wilson* v. *Assurance Co.*, 51 S. C., 540, 29 S. E., 245.

The information which Clark received had a direct connection with the transaction, in which he was attempting to negotiate additional insurance, and notice of such facts was, therefore, imputable to the insurance company.

In the case of *Gibbes Machinery Co.* v. *Roper,* 77 S. C., 39, 48, J. A. Pate, an agent of the plaintiff, while negotiating the sale of certain machinery, received notice of a deed from L. B. Roper to Pocahontas Roper, and of the mortgage of the land, from Pocahontas Roper to C. S. McCall, but failed to communicate such notice to his principal. The question was whether the Gibbes Machinery Co. was a creditor for value without notice as to the land conveyed by the deed. The Court thus ruled upon this question:

"Pate unquestionably had authority as agent to enter into the agreement for the sale of the machinery, subject to the approval of his principal, and, in this instance, the sale of the machinery was ratified by the principal. The contract showed upon its face that a due regard for business methods made it the duty of the agent to take into consideration the financial responsibility of the purchaser, in the absence of a limitation upon the authority of the agent, of which the purchaser had notice. And it appears from the testimony that the agent, in discharging said duty, considered the fact that the land had been conveyed to Mrs. Roper, and by her mortgaged to C. S. McCall, in determining whether the credit of L. B. Roper was thereby affected.

"As the financial condition of L. B. Roper was an element, necessarily entering into the sale of the machinery by the agent, in the first instance, unless the purchaser had been notified that the agent was not authorized to consider this question, the fact that Roper had conveyed the land and that it had been mortgaged was material, and had a direct bearing upon the contract. Under such circumstances notice communicated to the agent will be imputed to the principal. *Salinas* v. *Turner,* 33 S. C., 231,

11 S. E., 702; *Bates* v. *Mortgage Co.*, 37 S. C., 88, 16 S. E., 883; *American Co.* v. *Felder*, 44 S. C., 478, 22 S. E., 598; *Blackwell* v. *Mortgage Co.*, 65 S. C., 105, 43 S. E., 395.

"Therefore, there was error in the ruling that the plaintiff was a purchaser for value without notice." This exception is overruled.

There are several other exceptions, but they simply present, in different form, the question whether "his Honor erred in charging the jury that plaintiff did not have to bring an action to compel assessment against the policies then liable for their *pro rata* share, before suit could be brought at law on the policies of insurance, when the company denied liability on the policies."

The rule is thus stated in *Lawler* v. *Murphy*, 8 L. R. A. (Conn.), 113, 119: "Two other questions were discussed before us, namely, whether, if it should be held that the contract contained an agreement to make an assessment, the plaintiff's remedy is at law, or whether she must first go into a court of equity to compel the defendants to make the assessment; and, if an action of law can be sustained, what is the rule of damages? As to the first, we think an action at law can be sustained. Neither circuity nor multiplication of actions is favored by our practice. If there is a contract to make an assessment, a breach of which is alleged and damages demanded therefor, and a rule of damages can be provided, why should not an action at law be sustained? Both Niblack and Bacon, recent writers upon the subject of Mutual Benefit Societies, after examining a great number of cases, come to the conclusion, with which we fully agree, that the decided weight of authority is to the effect that an action at law will lie for damages, for breach of a contract to make an assessment." See, also, *Bentz* v. *N. W. Aid Ass'n*, 2 L. R. A. (Minn.), 784; and *Jackson* v. *N. W. M. R. Ass'n*, 2 L. R. A. (Wis.), 786.

When the insurance company denies all liability and refuses to make the assessment, it has no just ground to

complain, if the party insured brings an action at law and recovers the amount of damages to which he would have been entitled, if the company had performed its part of the contract.

These exceptions are also overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.