6986

## McCARTY v. PIEDMONT MUTUAL INS. CO.

1. MUTUAL INSURANCE.—WAIVER AND ESTOPPEL arising out of the acts of agents apply to mutual assessment companies as to old line insurance companies, and this rule applies to such assumed risks as subsequent incumbrances.

2. IBID.—IBID.—IBID.—A mere declaration of intention by insured at time of making application for insurance in a mutual assessment

company, that he intended to place a small mortgage on the property to be insured, cannot be the basis of a waiver or estoppel to assert a condition of the subsequently executed contract that any subsequent incumbrance without written consent of insurer would avoid the policy.

*Hankinson* v. *Ins. Co.,* 79 S. C., 392, and *Plunkett* v̇. *Ins. Co.,* 79 S. C., 407, *distinguished from this.*

3. Iʙɪᴅ.—Iɴ ᴀʙsᴇɴᴄᴇ ᴏғ ғʀᴀᴜᴅ in a valued policy form of insurance, insured, in case of total loss, and after sixty days from issuance of, is entitled to recover the policy amount for which the property was insured.

4. Cʜᴀʀɢᴇ.—Statement in charge of facts not in controversy is not a charge on the facts.

5. Pʀɪɴᴄɪᴘᴀʟ ᴀɴᴅ Aɢᴇɴᴛ.—In absence of specific request, instruction, "if a principal acts upon the acts ōf his agent and accepts it, of course he is bound by it," is a sufficient statement of the law as to ratification by principal of the acts of his agent.

Before Mᴇᴍᴍɪɴɢᴇʀ, J., Aiken, Fall term, 1907. Reversed.

Action by H. D. McCarty against Piedmont Mutual Insurance Company. From judgment for plaintiff, defendant appeals.

*Messrs. Carlisle & Carlisle* and *Croft & Croft,* for appellant. *Messrs. Croft & Croft* cite: *Agents of a mutual assessment company cannot waive by-laws and provisions adopted by members:* 2 Abb. Pr. N. S., 172; 4 Allen, 118; 7 Allen, 242; 3 Allen, 602; 9 Allen, 331; 66 A. D., 410; 8 Gray, 37; May on Ins. Par., 146; 79 A. D., 732; 1 Beas., 333; 25 Conn., 207; 38 Ill., 167; 19 L. A. Ann., 214; 4 Barr., 185. *The promise not to encumber enters into the essence of the risk:* 40 L. R. A., 358; 54 A. D., 389; 57 A. D., 729; 86 A. D., 362; 4 L. R. A. (N. S.), 607; 16 Ency., 922; Rich. on Ins., 62. *That insured paid mortgage after fire is no defense:* 16 Ency., 922; 48 L. R. A., 607; 68 S. C., 378. *An estoppel cannot arise from a promise as to future action:* 96 U. S., 546. *Principal is not bound by acts of*

*agent on which he acts without knowledge of the material facts:* Mech. on Ag., 128, 129, 148.

*Messrs. Hendersons,* contra, cite: *Value fixed in policy is conclusive:* Code 1902, 1816, 1817; *and this applies to mutual companies:* 61 S. C., 458. *Can there be waiver by agent of mutual assessment company?* 55 S. C., 589; 57 S. C., 17; 78 S. C., 398; Rich. on Ins., sec. 76, p. 395; 19 Cyc., 777; May on Ins., secs. 139, 145, 148, 147. *Could knowledge by agent of intention to put mortgage on property amount to waiver?* 52 S. C., 229; 75 S. C., 262, 320; 51 S. C., 186; 70 S. C., 306; 48 S. C., 222; 51 S. C., 540; 13 S. C., 317; 25 Am. St. R., 494; 48 Am. St. R., 537; 78 S. C., 388.

July 31, 1908.   The opinion of the Court was delivered by

Mr. Justice Jones.   This action is upon an insurance policy issued by defendant to plaintiff, November 8, 1906, indemnifying him against loss by fire on a dwelling house, a tenant house, and some household furniture, situated in Aiken county, South Carolina.   On March 16, 1907, the property insured was totally destroyed by fire.

Recovery was resisted by defendant under two defenses, (1) placing an incumbrance upon the property after issuance of the policy without the written consent of the defendant, (2) fraudulent overvaluation of the dwelling house. Judgment was rendered for the plaintiff.

The defendant is a domestic mutual insurance company, regulating its business by means of a constitution and by-laws, of which the insured becomes a member on the issuance of the policy.   When application was made for the policy, on November 6, 1906, defendant's agent asked plaintiff if there was any mortgage on the property and plaintiff answered there was not, but that he expected to put a small mortgage on it soon, and asked him if that would make any difference, to which the agent replied that it would not.

Upon this assurance, the plaintiff, on January 27th follow-ing, gave a mortgage to the Bank of Aiken for $150, with-out any other consent on the part of the defendant, except what may be deemed involved in the knowledge and repre-sentations of defendant's agent in negotiating for the policy.

The first question presented under the exceptions is whether the doctrines of waiver and estoppel, arising out of the knowledge and acts of agents, apply to mutual assessment companies as to the old line insurance companies.

The decisions in this State show that mutual insurance companies and fraternal benefit societies are governed by the same rules of law as the old line insurance companies. *McBride* v. *Mut. Ins. Co.,* 55 S. C., 589, 33 S. E., 720; *Sparkman* v. *Supreme Council,* 57 S. C., 16, 35 S. E., 391; *Thompson* v. *Piedmont Mut. Ins. Co.,* 77 S. C., 486, 58 S. E., 341; *Morrison* v. *Benev. Ass'n,* 78 S. C., 398, and in *Hankinson* v. *Piedmont Mut. Ins. Co.,* 80 S. C., 392; *Plunkett* v. *Piedmont Mut. Ins. Co.,* 80 S. C., 407.

Appellant contends that this rule should not apply to con-ditions affecting the *essence* of the contract, the *risk* assumed, such as a subsequent incumbrance. We see no reason in making the distinction contended for by appellant. The mutual insurance company is a distinct entity as a cor-poration, and, like other corporations, must act through agents. The knowledge acquired by its agents within the apparent scope of their authority ought to be imputed to it as in the case of any other principal. Certainly until the delivery of the policy the applicant is not a member of the mutual association and cannot be presumed to even know the constitution and by-laws of the association, much less to be bound thereby, and experience teaches that he acquires very little knowledge of the constitution and by-laws after membership.

The agent and applicant are not upon equal terms of knowledge. The applicant is generally ignorant of the

powers of the agent and the special rules by which the
solicited contract is to be controlled. The agent is gener-
ally expert in these matters, and common honesty and fair-
ness demand that the applicant be not misled, to his injury
by the agents in one kind of association as well as the other,
whether the subject matter of waiver and estoppel relate to
the form or the substance of the contract.

Another question involved is whether the knowledge and
representations of the agent in this case can be the
basis of waiver or estoppel, since they did not relate
to a known or existing fact, but to something in-
tended to be done in the future.

This presents a serious question. Waiver generally
involves the relinquishment of a known or existing right.
Estoppel by misrepresentation generally involves some mis-
representation of a past or existing fact. Hence, generally,
representations *de futuro* do not form the basis of waiver or
estoppel. A leading authority on this subject is *Insurance
Company* v. *Mowry,* 96 U. S., 546, in which the Court said:
"The previous representation of the agent could in no
respect operate as an estoppel against the company. Apart
from the circumstance that the policy subsequently issued
alone expressed its contract, an estoppel from the represen-
tations of a party can seldom arise, except where the repre-
sentations relate to a matter of fact, to a present or past state
of things. If the representation related to something to be
afterwards brought into existence, it will amount only to a
*declaration of intention* or of opinion, liable to modification
or abandonment upon a change of circumstances, of which
neither party can have any certain knowledge. The only
case in which a representation as to the future can be held
to operate as an estoppel is where it relates to an intended
abandonment of an *existing right* and is made to influence
others, and by which they have been induced to act. An
estoppel cannot arise from a promise as to future action
with respect to a right to be acquired upon an agreement not

yet made." This language is made the basis of the text in 11 Ency. Law, 425, 16 Ency. Law, 944, and in 16 Cyc., 752, where cases are collated. Among the cases enforcing the doctrine of Mowry's case, *supra,* may be cited: *Morris* v. *Orient Ins. Co.* (Ga.), 33 S. E. Rep., 430, distinguishing *Carrugi* v. *Ins. Co.,* 40 Ga., 135, 2 Am. Rep., 567; *Elliott* v. *Whitmore* (Utah), 90 Am. St. Rep., 701; *Gray* v. *Germania Ins. Co.* (N. Y.), 49 N. E. Rep., 675.

The point under consideration is not concluded by the case of *Williamson* v. *Association,* 62 S. C., 405, 38 S. E., 616. On the former appeal in that case, 54 S. C., 593, 32 S. E., 765, the Court, in determining what was the contract between the parties, considered the representation of the association in its certificate of stock and literature, that the stock shall mature in a definite number of months, which was inconsistent with its by-laws. On the appeal in 62 S. C., 405, the question arose whether it was error to refuse to instruct the jury that defendant could not be estopped by representations in certificate of stock and literature, as they related to a future fact. The Court, at page 405, held that there was no error because the representations were not in reference to a future fact. What would have been the result had the representations related merely to future expectations or intentions with respect to a contract merely proposed, does not appear, except inferentially.

It has frequently been held in this State that if an insurance agent at the inception of the contract has knowledge of a fact constituting a forfeiture, such knowledge is imputed to the company, and the issuance of the policy as a valid policy estops the company from asserting the forfeiture. *Gandy* v. *Ins. Co.,* 52 S. C., 228, 29 S. E., 655; *Pearlstine* v. *Ins. Co.,* 74 S. C., 250, 54 S. E., 372; *Doyle* v. *Hill,* 75 S. C., 263, 55 S. E., 446; *Fludd* v. *Assr. Soc.,* 75 S. C., 320, 55 S. E., 762; *Rearden* v. *State Mutual,* 79 S. C., 526.

Imputing to defendant company the knowledge had by its agent, then the case practically stands as if the agent had

incorporated in the application plaintiff's intention to place a small mortgage on the property, and the delivery of the policy was, therefore, made after knowledge of his intention. But the distinction between knowledge of a fact inconsistent with a valid policy in its inception and knowledge of a mere intention to do something in the future, which knowledge is consistent with the existence of the policy as a valid contract in its inception, is manifest. The intention may never be carried out, or, if carried out, the contract stipulates as to the manner and conditions. Hence to sustain the view that there was waiver of, or estoppel to assert, the conditions of the contract in this case, the Court must go further than it has yet gone on this subject.

The by-laws of the defendant company do not forbid the placing of an incumbrance upon the insured property. The policy, however, contained a stipulation that if the property be incumbered, etc., without the written consent of the company indorsed thereon, it shall not be held liable, and further provided that the insured shall furnish a correct account of any incumbrance on the property insured and promptly advise the company of any insurance placed upon it after the policy is issued. In the application, it is declared that there is no contract of insurance until the application is accepted by the home office in Spartanburg, subject to the charter, by-laws and rules governing the company. It is also declared in the application that "I understand that no contract is valid except in writing, signed by the president or secretary, and that the company employs no agents, but solicitors, which I accept as my agent to assist me in making application to the company for said insurance."

The foregoing recitals show that the delivery of the policy as a valid contract is consistent with the imputed knowledge that the insured intended to place a mortgage upon the insured property, for the policy provided what the assured should do in that event.

As the mere declaration of intention to do something in the future with respect to a contract not in existence cannot be the basis of a waiver or estoppel to assert a condition of the subsequently executed contract, we must sustain the appellant's contention on this point.

This point was not involved, and therefore was not considered in *Hankinson* v. *Piedmont Mut. Ins. Co.*, and *Plunkett* v. *Piedmont Ins. Co., supra,* as in both of those cases the knowledge of the agent, which constituted the basis of waiver or estoppel, was as to existing facts inconsistent with the delivery of the policy as a valid contract, and, therefore, these cases were governed by the rule in Gandy's case, *supra.*

Respondent cites *Hagan* v. *Merchants and Bankers Ins. Co.*, 81 Iowa, 321, 25 Am. St. Rep., 493, and *Mitchell* v. *Home Ins. Co.,* 72 Miss., 53, 48 Am. St. Rep., 535, to sustain the view of the Circuit Court. In the former case the agent at the time of the application not only knew that the applicant was desirous of concurrent insurance, but he knew he was actually applying in another named company for a definite amount of concurrent insurance, in conflict with the provision of the litigated policy. In the second case above, the agent had full knowledge that the insured had and intended to have no safe and full knowledge that the inventory and books of account had been kept and were to be continued to be kept at the store. Both these cases involved to some extent a knowledge of an existing fact as distinguished from a mere intention.

In the case of *Kitchen* v. *Hartford Fire Ins. Co.,* 57 Mich., 135, 58 Am. Rep., 344, the agent at the time of the application, not only knew of the pendency of another application for concurrent insurance, but immediately after such concurrent insurance was obtained was informed of the fact. The continued recognition of the policy after knowledge of such facts was held to estop the company. So that the case last cited may well be supported on the principle enforced in this

State, that any act showing recognition of the policy as valid, after knowledge by the company of a fact constituting a forfeiture, is evidence of waiver of the forfeiture.

With respect to the question of overvaluation of the dwelling house, the Court instructed the jury that if plaintiff was entitled to recover, he was entitled to recover the amount of the insurance specified thereon in the policy. The contention of appellant is that the plaintiff represented the original cost of the dwelling at five thousand dollars; that this was a warranty precedent, and that the jury should have been instructed that the knowledge of the agent of defendant company would not amount to a waiver so as to bind the company to the full amount specified in the policy. The valued-policy form attached to the policy shows that the parties agreed upon five thousand dollars as the value of the building, upon which insurance to the amount of $1,500 was granted.

Section 1816, vol. I, Code of Laws, provides: "No fire insurance company, or individuals writing fire insurance policies, doing business in this State, shall issue policies for more than the value to be stated in the policy, amount of the value of the property to be insured, the amount of the insurance to be fixed by insurer and insured at or before the time of issuing said policies, and, in case of total loss by fire, the insured shall be entitled to recover the full amount of the insurance, etc."

Section 1817 provides: "No statement in the application for insurance shall be held to prevent a recovery before a jury on said policy in case of total or partial loss: *Provided,* After the expiration of sixty days, the insurer shall be estopped to deny the truth of the statement in the application for insurance which was adopted except for fraud in making the application."

The question whether there was any fraud in the valuation of the property was fairly submitted to the jury under other instructions, and the fire occurred more than sixty

days after the issuance of the policy.   The instructions complained of were, therefore, correct.

It is contended that the Court charged in respect to matters of fact in stating to the jury: "And the plaintiff would also be entitled to recover three-fourths of the actual value at the time of the fire of the personal property, however, not to exceed $500." This exception cannot be sustained.   There was no dispute in the testimony that there had been a fire which had totally destroyed the property.

The defendant made a number of requests to charge, touching the subject of agency, which were given to the jury with the remark: "All of this may be qualified by stating that a principal may ratify the acts of an agent. If the principal acts upon the acts of an agent and accepts it, of course it is bound by it."   It is not contended that the qualification is not a proper one with respect to the general law of agency, but that the Court should have gone further and have instructed the jury: "That if the principal, after the facts connected with the doing of the unauthorized acts of its agent are brought home to his knowledge, then accepts the benefit of the same, either expressly or impliedly, the principal would be bound by the unauthorized acts of his agent; but if the principal abides the act of his agent, without the facts connected with such act being brought to his knowledge, then he would not be held by his conduct to have ratified the unauthorized act of his agent." If appellant desired more detailed instructions with respect to the law of ratification by principal, requests to that end should have been made.

The foregoing rulings practically dispose of all the material questions raised by the exceptions.

The judgment of the Circuit Court is reversed.

Mr. Justice Gary, *dissenting.* Public policy demands that the agent should not be allowed to place such a construc-

11—81

tion upon the contract, that a person would thereby be induced to take out a policy of insurance, thus enabling the company to get possession of the premium of insurance, as this would be a fraud upon the rights of the party insured.

This principle is so fully sustained by the recent cases of *Williamson* v. *Association,* 54 S. C., 582, 32 S. E., 765; *Eastern B. & L. Association* v. *Williamson,* 23 Sup. Ct. Rep., 527; *Vought* v. *Eastern B. & L. Association,* 172 N. Y., 508, that I deem it only necessary to cite those cases.

For these reasons I dissent.