15216

## LEMONS v. PILOT LIFE INS. CO.

(13 S. E. (2d), 278)

*Messrs. Smith, Wharton & Hudgins* and *McDonald, Macaulay & McDonald* for appellant,

*Messrs. Hamilton, Gaston & Hamilton* for respondent,

February 18, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE CARTER.

This action was brought to recover the sum of $540.00, the amount claimed to be due under the double indemnity provision of a policy of insurance upon the life of plaintiff's mother, Mrs. Maggie Lemons, it being alleged that the policy was issued and constructively delivered to her by the de-

fendant's agent, Hinton. Plaintiff alleges that, on April 15, 1939, the day before Mrs. Lemons was accidentally shot and instantly killed by her infant daughter, defendant's agent, Hinton, took the policy to her residence "for delivery to her, but failed to make actual delivery because she was not at home;" that the company did, however, as a matter of law, constructively deliver the policy to her while she was in good health. The complaint further sets out that defendant denied liability and refused payment.

Defendant alleges that, because of certain medical information received, it had declined to issue the policy applied for, and that, for this reason, no policy was ever mailed to its agent for delivery. It, therefore, denied all liability.

The case was tried before Judge Gaston and a jury, and resulted in a verdict for plaintiff in the amount sued for. From judgment entered on the verdict, defendant appeals.

By the first exception appellant charges that "his Honor erred in permitting the plaintiff's witness, Floyd Wilson, during plaintiff's presentation of his evidence in chief, to testify over objection to an alleged statement made to him by defendant's soliciting and collecting agent, Hinton, four months after the death of Mrs. Lemons to the effect that the policy in question had been sent to him for delivery and by him returned to the defendant, the error being that said testimony was irrelevant and incompetent and not part of the *res gestae* nor made within the scope of said agent's authority and said testimony was highly prejudicial to the defendant and should have been excluded."

This exception cannot be sustained. Wilson's statement can certainly do defendant no hurt or harm for the reason that there was other testimony with reference to the constructive delivery of the policy sufficient to require the submission of that issue to the jury. We, therefore, deem it unnecessary to pass upon the relevancy or competency of the testimony objected to. This holding is supported by the fol-

lowing found in *Garrick v. Railroad Company*, 53 S. C., 448, 31 S. E., 334, 335, 69 Am. St. Rep., 874; "But, while there was error in the ruling of the Circuit Judge as to the admissibility of the testimony above referred to and stated, yet such error was rendered entirely harmless by reason of the fact that the testimony of J. Lee Nease and S. B. Sawyer, Jr., received without objection, was quite sufficient to prove the same fact which the declarations objected to tended to prove."

The trial Judge was correct in refusing to admit in evidence the letter written by Miss Stewart and addressed to Mr. Cook, at Chester. She testified that she dictated and signed the letter, that her secretary then took it to the mailing department but that the witness did not see it put in the mail; that in reply to that letter she received the "birth certificate and the examination." Counsel for respondent objected on the ground that there was no proof that Mr. Cook received the letter. Judge Gaston sustained the objection, stating that the letter "would not be admissible without putting Mr. Cook up." Mr. Cook himself is the only person who can state positively that the letter was received by him. The second exception must be overruled.

Neither do we agree with the contention made by the third and fourth exceptions, that a verdict should have been "directed" for defendant because the evidence showed that the applicant was not in good health, and that her application for insurance had been declined. As there must be a new trial of the case we will not set out in full the evidence bearing on, or go into a lengthy discussion of this issue. There was sufficient testimony to the effect that the agent Hinton brought the policy to the home of the insured on the day before her death to require submission to the jury of the question as to the constructive delivery of the policy. It was the jury's province to decide whether the application had been declined or whether there had been a con-

structive delivery of the policy by the agent on April 15th, the day before the death of Mrs. Lemons.

The question raised by the fifth exception, "Did the trial Judge err in submitting the question of waiver to the jury upon evidence of any agreement made at the time the application was taken," must be answered in the affirmative.

Some time prior to April 15, 1939, while at respondent's home, appellant's agent, Hinton, solicited respondent to take some insurance on the life of his mother. The application, in which respondent was named as beneficiary, was written out by the agent and signed by Mrs. Lemons. It is alleged that "at the time the application was signed, Robert T. Hinton, agent of the defendant, loaned the plaintiff one dollar with which to pay two weeks' premiums," and further "that the said one dollar was paid to Pilot Life Insurance Company by Robert T. Hinton for plaintiff, but if Pilot Life Insurance Company did not receive the said one dollar, its said agent waived payment of the same." Respondent testified that, upon being asked by the agent to take out the insurance, he informed Hinton that he did not have the money to pay for it; but that the agent "told me to go ahead and take it out, and he would loan me a dollar to pay" two weeks' premiums on it, and that "I could pay it up when I made a draw at the camp."

The trial Julge submitted to the jury the issue of waiver, charging them that it was their province to decide, as a question of fact from the evidence, whether or not there was an agreement between the agent and the plaintiff, and whether such alleged agreement consituted an extension of credit for the payment of the initial premium, that is, "whether or not the defendant waived the manner and the method of paying the initial premium, by any agreement between the parties to that effect."

Appellant contends that the contemplated loan of $1.00 to pay the initial premium when the policy came back was

not made, "and that such promise to be performed in the future did not as a matter of law constitute waiver of the stipulation that the first premium must be paid upon delivery of said policy"; in other words, that the agent did not, as a matter of law, by the alleged oral agreement, which was a promise to pay in the future the initial premium on the policy, waive the condition precedent contained in the policy as to the prepayment of the initial premium. Respondent contends that "there was no agreement to be performed in the future" but that the evidence shows that the loan was made, the $1.00 being actually advanced by Hinton for plaintiff, on the day or at the time the "application was signed and was not to be made in the future if and when the policy was issued."

We think that plaintiff's testimony, that "he (the agent) told me he *would mark it up,* and loan me the dollar *when he marked it up;* and he said that after the doctor examined her, and he said it would be paid, and *when it came back from the home office, it would be in full benefit,* if it passed the doctor's examination" (Italics ours), and again, "he told me he would  *  *  *  mark it up when it come back," controverts his claim that the loan was made as of the day the application was signed. Such testimony clearly points to a future time for actually making the loan. This promise by the agent was merely the expression of an intention to pay in the future the initial premium on the policy. And we can have no assurance that the agent would have actually executed such expressed intention. We are of opinion that the case of *McCarty v. Insurance Company,* 81 S. C., 152, 62 S. E., 1, 2, 18 L. R. A. (N. S.), 729, is decisive of the issue here, and that the alleged agreement could not, as a matter of law, constitute waiver of the condition precedent contained in the policy. We quote that decision:

"Another question involved is whether the knowledge and representations of the agent in this case can be the basis of waiver or estoppel, since they did not relate to a known

or existing fact, but to something intended to be done in the future.

"This presents a serious question. Waiver generally involves the relinquishment of a known or existing right. Estoppel by misrepresentation generally involves some misrepresentation of a past or existing fact. Hence, generally, representations *de futuro* do not form the basis of waiver or estoppel. A leading authority on this subject is, *Insurance Company v. Mowry*, 96 U. S. (544) 546, 24 L. Ed., 674, in which the Court said: 'The previous representations of the agent could in no respect operate as an estoppel against the company. From the circumstance that the policy subsequently issued alone expressed its contract, an estoppel from the representations of a party can seldom arise, except where the representations relate to a matter of fact, to a present or past state of things. If the representations related to something to be afterwards brought into existence, it will amount only to a *declaration of intention*, or have been liable to modification or abandonment upon a change of circumstances, of which neither party can have knowledge. The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made.'

\* \* \*

"Imputing to defendant company the knowledge had by its agent, then the case practically stands as if the agent had incorporated in the application plaintiff's intention to place a small mortgage on the property, and the delivery of the policy was therefore made after knowledge of his intention. But the distinction between knowledge of a fact inconsistent with a valid policy in its inception and knowledge of a mere intention to do something in the future, which knowl-

edge is consistent with the existence of the policy as a valid contract in its inception, is manifest. The intention may never be carried out, or, if carried out, the contract stipulates as to the manner and conditions. Hence to sustain the view that there was waiver of, or estoppel to assert, the conditions of the contract in this case, the Court must go further than it has yet gone on this subject."

Plaintiff urges that the cases of *Galphin v. Pioneer Life Insurance Company,* 157 S. C., 469, 154 S. E., 855, and *Wright v. Life Insurance Company,* 165 S. C., 190, 163 S. E., 133, support his claim. But the facts of those cases show that they lend no aid or comfort to plaintiff. In the *Galphin case* the policy of insurance had actually been delivered to insured when the agent extended the time for payment of the initial premium. In the *Wright case* the policy had been issued and was in the hands of the company's agent when the extension of time for payment of the initial premium was made. In both instances the contract was actually in existence when the agreement was made, that is, there was in existence a right—the condition contained in the policy—which the company's agent had the power to relinquish; the agent did relinquish, at the moment the agreement was made, the company's right to demand prepayment of the initial premium, which, of course, was waiver of such right. In other words, the agreement was executed at the time it was made. In the case at bar, however, the alleged promise by Hinton was merely the expression of an intention to pay the initial premium at some future date, which, as we have already seen, could not constitute waiver of the condition precedent contained in the policy.

The last question raised is, "Should the case be reversed because of improper argument of plaintiff's counsel?"

The argument objected to as improper and prejudicial was that of respondent's counsel, Mr. Hamilton, with reference to the alleged offer of a job to one of respondent's

witnesses, Haynes. Mr. Hamilton said: "The Pilot was offering him this; it was for an unholy purpose." Upon objection by appellant's counsel, the trial Judge held that such argument was not supported by the testimony, instructed the jury to disregard it, and asked counsel not to repeat such argument. In spite of this ruling, Mr. Hamilton continued the argument, whereupon the Court again said: "I haven't heard any testimony along that line." Further repetition of the charge against appellant was made, respondent's counsel stating at one time that the job was offered to Haynes by the company in order to make him change his testimony.

We think there is merit in the contention here. Counsel's persistence in repeating the argument, after being ordered by the Court not to do so, was clearly improper and prejudicial to the defendant. This conclusion is upheld by the following statement in *Major v. Alverson,* 183 S. C., 123, 190 S. E., 449, 450: "Furthermore, the question here, as is seen from the remarks of the trial Judge, turned largely upon a matter of procedure. Judge Bellinger had ruled, when the same counsel was cross-examining the same witness, that a defendant had the right to make a general denial of allegations of the complaint and then may, in addition to that, make inconsistent defenses; and that such pleading would not call into question the veracity of the pleader. Counsel for plaintiff intimates in his argument here that the Judge was wrong about this where verified pleadings are involved; but, whether right or wrong, the Court had made its ruling, and for counsel to argue to the jury in opposition to such ruling, tended to aggravate the situation, to the prejudice of the defendant."

The judgment of the Circuit Court is reversed and the case remanded to that Court for a new trial.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.