## 6846

### REARDEN v. STATE MUTUAL LIFE INSURANCE CO.

1. INSURANCE—PRINCIPAL AND AGENT—EVIDENCE—PAROL.—Any information a soliciting agent of an insurance company may have, before application, of the condition of health of an applicant, obtained while soliciting insurance, is notice to the company of the condition of health of the applicant and may be proved by parol, although the statement in the application is contradictory of the parol evidence.

2. CHARGE.—Statement by judge in colloquy between him and attorney over admission of evidence, to the effect that fire insurance people were the smartest people in the world, and if the courts promulgated a rule on one day they would meet it on the next with another, is not a charge on the facts.

3. INSURANCE—EVIDENCE.—In suit on life insurance policy it is admissible to prove by beneficiary and others that insured offered to return the policy to the soliciting agent.

Before WATTS, J., Saluda, August Term, 1907. Affirmed.

Action by Lula Rearden against State Mutual Life Insurance Company. From judgment for plaintiff, defendant appeals.

*Messrs. Nelson & Nelson* and *B. W. Crouch*, for appellant, cite: *Admission of evidence tending to contradict statement in application was improperly admitted:* 70 S. C., 306; Vance on Ins., 322; May on Ins., Sec. 137; 3 Cool. Briefs on Law of Ins., 2512; 117 U. S., 519; 92 Fed. R., 503; 40 L. R. A., 359; 183 U. S., 308; 80 Fed. R., 684; 27 N. Y., 480; 122 N. Y., 274. *Statement of Court about insurance companies making rules to meet decisions of courts was a charge on the facts:* 47 S. C., 505; 33 S. C., 107; 36 S. C., 543; 40 S. C., 37; 24 S. C., 505; 38 S. C., 31; 52 S. C., 539; 61 S. C., 21; 71 S. C., 142; 72 S. C., 353, 383.

*Messrs. Thurmond & Ramage,* contra, cite: *Principle in fire insurance cases, that knowledge of the agent is the*

*knowledge of the company, and prevents forfeiture, applies*
*here:* 63 S. C., 197; 77 S. C., 39; Keer on Ins., 214; 52
S. C., 224; 29 S. E., 624; 22 L. Ed. U. S., 594; 33 Id., 41;
29 Id., 934; 22 L. R. A., 330; 77 S. C., 486; 78 S. C., 433;
57 L. R. A., 322.

April 4, 1908.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   Lula Rearden, the plaintiff,
brought this action against the defendant to recover one
thousand dollars, and interest thereon, from March the first,
1907, under a policy of insurance issued by the defendant
company on the life of her husband, Walter F. Rearden, on
the 7th day of September, 1906; the said Walter F. Rearden
having died on the 31st of January, 1907.

The defendant admitted that it had issued the policy re-
ferred to, the said policy of insurance, and gave as its rea-
sons for not paying the policy that the insured made false
statements as to his health when insured.

The case came on for trial before his Honor, Judge Watts,
and a jury, after hearing the testimony and the charge of
his Honor, the jury returned a verdict in favor of the plain-
tiff against the defendant for one thousand and twenty dol-
lars.

A motion was made for a new trial, which was refused
by the Circuit Judge, thereupon the defendant appealed upon
the following eight exceptions:

We will consider these exceptions in their order.

1. "Because his Honor erred in permitting the witness
Timmerman, over objection of counsel, to testify as to W.
M. Hazel soliciting business in the community in which
Rearden lived, said testimony being intended to show
notice to Hazel of said Rearden's condition; the
error being that the company was only bound by the
written statements of the insured contained in his applica-
tion, and knowledge to the agent under the terms of said
application was not knowledge to the company."

There was no objection to this testimony because W. M. Hazel was the agent of the defendant and solicited insurance for the defendant in the community where Rearden lived, his name was signed to the application for insurance, any knowledge or information relating to the condition of Rearden, the insured, was the knowledge of the defendant, while the agent was acting within the scope of his authority. As to what effect such testimony of Hazel would have upon the defendant was a matter for after consideration. Certainly the testimony itself was competent. This exception must be overruled.

2. "Because his Honor erred in holding: 'I think I am bound by the decision of Madden against Insurance Company. There they say that if the agent has any knowledge, that knowledge is imputed to the company, and if they have got an agent going out soliciting insurance and he has knowledge of the fact when a man makes his application that he is making a mistake about it, and he has notice of the fact, then I think that would be notice to the company. I know it is true with fire insurance companies. I don't know much about life insurance companies. They are the smartest people on the face of the globe. Let the courts pass one rule today and they will frame a rule to meet it the next. Several years ago I tried strictly to carry out these contracts as made by these parties, but I was in error in doing it; the Supreme Court said so. So I will rest on the Madden case this time;' the error being: (1) That the policy was issued upon the written application of the insured, wherein he agreed that the company was only bound by the statements therein contained and was not bound by any statements, promises or information made by, or given by or to the person soliciting or taking this application for a policy of insurance unless such statements, promises or information be reduced to writing and presented to the officers of the company at the head office, in this application. (2) That the remarks of his Honor were stating what he believed to be the facts to the jury, to wit: 'What this company and all

insurance companies did in reference to making rules and thereby evading the decisions of the courts against them, which was prejudicial to the defendant and in violation of Section 26, of Article V, of the Constitution of South Carolina, in reference to judges charging upon the facts.' "

It is alleged that the Circuit Judge made a mistake in declaring that he was bound under the decision of the Supreme Court of this State in the case of *Madden* v. *Insurance Co.*, 70 S. C., 295, 49 S. E., 855 ; when a decision of the Supreme Court of this State is quoted as authority for a ruling by a Circuit Judge no mistake is made, provided such ruling bears upon the point at issue before the judge who quotes the case. "When the insured at the time of making application showed to agent of insurer an inventory of the stock of goods and the agent said, 'it is all right,' the insurer thereby waives its right to afterwards insist that such inventory does not conform to the iron safe clause." All the Circuit Judge meant was that the case of Madden just quoted was an authority to him, for ruling that an agent, within the scope of his authority as such, would bind his principal by the admission so made. The agent has knowledge, such knowledge would be imputed to the principal. An insurance company, as a corporate entity, must conduct its business through the means of agents, and where such agents have knowledge of important facts bearing upon the corporate business the knowledge of such agents is the knowledge of the corporation, if acquired within the scope of the agency.

It is useless to diagnose by high-sounding phrases and artfully constructed sentences any other effect of agency, as was well said by this Court in the case of *Fludd* v. *Assurance Society,* 75 S. C., 315, 320. "The knowledge of an agent, acquired within the scope of his agency, is imputable to the principal, and if an insurance company, at its inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy, as a valid policy, it is estopped to assert such

34—79

ground of forfeiture." *Gandy* v. *Insurance Co.*, 52 S. C., 228, 29 S. E., 655.

The appellant seeks to parry the force of this law by quoting the case of Metropolitan Life Insurance Company, quoted in insurance journals of January, 1908, reported in 91 Pac. Rep., 609, as follows: "The application stipulated that the answers were true, and were the basis of the contract, and if false the policy should be void; that only the officers had authority to determine whether the policy should issue, and no statements of the soliciting agents should be binding unless presented in writing to the officers. The application falsely stated that he had never had paralysis, while the agent had knowledge to the contrary. *Held,* That knowledge by the company would be waiver of the misstatement, but such knowledge of the soliciting agent, when not communicated to the company, was not knowledge to the latter. The agent had no authority to waiver the misrepresentation. *Held,* That the issue of a policy under such conditions was not a waiver of the misrepresentation."

Such testimony just before quoted is opposed by the quotation just made from our own reports, besides, not only was the knowledge of the soliciting agent, but another agent of the defendant company, Dr. J. E. Lee, testified that in May, 1906, he saw the deceased with a spell upon him, and he examined him while in that condition, why should, therefore, the company not be held to have waived this condition of the deceased at the time the policy was issued to him? And as Miss Bessie Rearden testified, Mr. Hazel said at the time when her father and Mr. Hazel were discussing the policy of insurance, "Papa asked Mr. Hazel did he reckon he could get in the company, having them spells. Mr. Hazel told him the spells he had didn't amount to nothing in that company." She also testified that the deceased had a spell while Mr. Hazel was talking to him about the insurance.

The remarks attributed to the Circuit Judge about the efforts of insurance companies making rules and thereby

evading the decisions of the courts against them was not used in his charge to the jury in violation of Section 26, Article V, of the Constitution, but in the colloquy that took place during the receiving of testimony. This exception is overruled.

3. "Because his Honor erred in permitting the witness Bessie Rearden, over objection of counsel, to testify that she had heard her father tell Mr. Hazel about his nervous spells before the policy was issued, and Mr. Hazel telling him the spells amounted to nothing; the error being that in the application for the policy of insurance, the insured specifically agreed that the company was not bound by any statements made to its agent or by any knowledge of the agent, which was not reduced to writing and made a part of his application for the insurance, and (2) Because Mr. Hazel had not been offered as a witness."

There was no error in admitting the testimony of Bessie Rearden, as to what she heard Mr. Hazel tell her father, the deceased, for while Mr. Hazel had not at that time been examined as a witness he was subsequently examined as such and no harm, therefore, resulted to the defendant, even if there was any harm in it. This exception is overruled.

4. "Because his Honor erred in permitting the witness Lula Rearden, the beneficiary under the policy, to testify, over the objection of counsel, that she saw her husband offer the policy of insurance to Mr. Hazel; the error being that said testimony was incompetent unless it was shown that the reason for desiring to surrender the policy was on account of the health of the insured, and there was no testimony offered that this was his reason for desiring to surrender the same and the jury were thereby led to believe that the insured desired to surrender the policy on account of his health, whereas, there was no evidence to that effect."

The Circuit Judge did not err in permitting Lula Rearden, the beneficiary under the policy, to testify that she saw her husband offer the policy of insurance to Mr. Hazel; Mr.

Hazel was the agent of the defendant and the offer to return the policy of insurance, after the policy had been issued, was a proper subject matter of testimony. There was no reason in law why Mrs. Reardon should not testify as a witness. Let this exception be overruled.

5. "Because his Honor erred in permitting the witness J. W. Bledsoe, over the objection of counsel, to state a conversation he had with W. M. Hazel, when the said Hazel had not been offered as a witness, and his Honor further erred in holding the testimony of said witness 'would be competent in this view; if he can bring home knowledge to Mr. Hazel that he knew this man had fits and was diseased, like it was contended here, under my ruling that would be competent;' the error being, that the company would not be bound by any knowledge conveyed to its agent that was not reduced to writing and made a part of that application upon which the policy of insurance was issued."

J. W. Bledsoe was a proper witness to state what conversation he had with Mr. Hazel relating to his knowledge of the fits which afflicted Rearden, the deceased, as an agent of the company he was bound by any knowledge possessed by him of such diseased condition of the insured, Mr. Rearden. Especially is this true when the Legislature of this State had empowered the insurance companies to bring an action to cancel the policy upon certain conditions. This exception is overruled.

6. "Because his Honor erred in permitting the witness J. W. Bledsoe, over objection by counsel, to testify that he saw W. F. Rearden offer the policy of insurance to Mr. Hazel when at Johnston; the error being that said testimony was incompetent unless it was shown that the reason for desiring to surrender the policy was on account of the health of the insured, and there was no testimony offered that this was his reason for desiring to surrender the same, and the jury were thereby led to believe that the insured desired to surrender the policy on account

of his health, whereas, there was no evidence to that effect."

The Circuit Judge did not err in admitting the testimony of the witness, J. W. Bledsoe, as an offer by Rearden to return the policy of insurance to Hazel in October at Johnston. As to the effect of that testimony other questions might be presented. This exception is overruled.

7. "Because his Honor erred in charging the jury: 'I charge you further, as a matter of law, if the agent of the company, who took Rearden's application for insurance, if he knew that Rearden was making false statements at the time and these statements were untrue and he had knowledge and notice of the fact that Rearden was making untrue or false statements, then notice to the agent would be notice to the company, and, in that event, if the company's agent knew that the statements made by Rearden, when he applied for the insurance policy were untrue, and then went on notwithstanding that, and issued and received his premium for it, then they would be bound to pay the policy to the beneficiary after his death, when proof of his death was properly proved to them;' the error being, that under the written application for the policy of insurance signed by Walter F. Rearden, he bound himself thereby and agreed 'that inasmuch as only the officers at the head office of the company have authority to determine whether or not a policy shall issue on any application, no statements, promises or information made or given to or by the person soliciting or taking the application for a policy, or any other person, shall be binding on the company or in any way effect its rights, unless such statements, promises or information be reduced to writing and presented to the officers of the company at the head office in the application.'"

It is alleged that the Circuit Judge erred in his charge to the jury, as set out in this exception. Although the policy of insurance contained a stipulation that only the officers at the head office of the company could give any statements or promises that would be binding on the company, yet if other agents performed their acts that negatives this restric-

tion to officers at the head office of the company, he would be protected by such sub-agents, such as William M. Hazel and Dr. J. E. Lee. Let this exception be overruled.

8. "Because his Honor erred in refusing to grant a new trial, made upon the following grounds:

(a) "Because the verdict of the jury is against the preponderance of the evidence, in that:

(1) "The evidence established the fact that the plaintiff had received an injury, had been subject to fainting fits and spells, and had been under medical treatment both at Johnston and in Augusta, Ga., before he applied for insurance, of which facts neither the company's agent nor the medical examiner was advised, and which facts were not reported in writing to the company when his application was signed.

(2) "The evidence established beyond question that neither the agent of the company, nor the medical examiner, nor any other person connected with the company had any notice or knowledge of the fact that the insured had been under medical treatment or that he had ever received any injury prior to his application for insurance.

(b) "Because the statements and agreements made in the application for the policy of insurance and signed by the applicant, W. F. Rearden, is the contract upon which the policy was issued, and is the sole agreement between the company and W. F. Rearden, upon which the policy was issued, which agreement provides that the company shall not be bound by any information, report, statement, or be considered to have knowledge of any facts, except such as are stated in writing in the application for insurance. This being the contract entered into between the company and the insured, it is error to admit testimony of any knowledge the agent may have had of the condition of said W. F. Rearden, as the testimony failed to show that such information was reduced to writing. In other words, he bound himself, notwithstanding any knowledge he may have conveyed to Mr. Hazel or the medical examiner, that was not to be binding upon the company, because all the company passed upon, all

the company had before it in order to enable it to determine whether this was an insurable risk, were the statements of Rearden and the report of the medical examiner. He bound himself that no other knowledge should be binding upon the company, unless that information was reduced to writing and made a part of the application, and, therefore, stated in the application.

(c) "Because the preponderance of evidence was to the effect that the medical examiner had no knowledge of the true state of W. F. Rearden's health at the time he applied for insurance, nor at the time he made the statements, which were reduced to writing, to the medical examiner."

We see no error here, the Circuit Judge found that there was no preponderance of the evidence as stated in the exception itself, all these matters have already been considered, there need not be, therefore, any new consideration thereof. This exception is overruled.

The judgment of this Court is, that the judgment of the Circuit Court be, and the same is hereby affirmed.