7797

## HUESTESS v. SOUTH ATLANTIC LIFE INS. CO.

1. ISSUES—INSURANCE.—Under evidence tending to show the insured informed the agent soliciting insurance that he had been refused insurance several times on account of kidney trouble; that the agent insisted upon an examination by his doctor, urging that he had gotten a similar case through, the issue of whether the warranties in the application were fraudulently made should be sent to the jury.

2. IBID.—IBID.—WAIVER.—Under evidence tending to show the insurer accepted premiums after knowledge that the insured was diseased, or after notice sufficient to put on inquiry, the issue of waiver should be sent to the jury.

3. PRINCIPAL AND AGENT—IBID.—Mere knowledge on the part of the insured that the agent of insurer was acting adversely to the interest of his principal would not prevent the knowledge of the agent being imputed to the principal, unless the insured participated with a fraudulent intent.

4. IBID.—A principal is bound by the act of his agent even where he is actuated by a fraudulent intent, if he is acting within the scope of his employment.

5. INSURANCE—WAIVER—FORFEITURE.—An agent authorized to solicit insurance may waive forfeiture.

6. IBID.—The conduct of the agent of the insurer tended to show that the right to insist on any of the warranties was waived.

    MR. JUSTICE WOODS *thinks there was no evidence of waiver or estoppel.*

7. REHEARING refused.

Before MEMMINGER, J., Marlboro, May term, 1910. Reversed.

Action by Maggie B. Huestess and others against the South Atlantic Life Insurance Company. From judgment on verdict directed by the Court, the plaintiffs appeal.

*Messrs. McColl, McColl & LeGrand,* for appellant. *Messrs. McColl & McColl* cite: *Effect of fraud in contract:* 25 Cyc. 800. *Applications filled out by agent of company:* 46 S. C. 548. *Effect of knowledge of agent of falsity of statement in application:* 75 S. C. 329; 79 S. C. 526. *Power of agent to bind company:* 57 S. C. 358; 70 S. C. 301; 74 S. C. 246; 183 U. S. 308. *Waiver:* 52 S. C. 225; 51 S. C., 181.

*Mr. LeGrand* cites: *Knowledge of the condition of insured's health by the agent is knowledge of the company:* 79 S. C. 526; 82 S. C. 51; 80 S. C. 392; 75 S. C. 315; 74 S. C. 246; 84 S. C. 181, 156; 63 S. C. 197; 70 S. C. 295; 78 S. C. 397; 81 S. C. 472; 54 S. C. 457; 52 S. C. 228; 83 S. C. 264; 80 S. C. 392.

*Messrs. Willcox & Willcox* and *Henry E. Davis,* contra, cite: *Party must read paper signed by him:* 77 S. C. 187; 62 S. C. 1; 77 S. C. 361; 9 Cyc. 388; 14 Pa. St. 496; 91 U. S. 45, 83, 236; 84 S. C. 95; 61 S. C. 338; 25 Cyc. 810, 18. *Not all information conveyed to agent is imputable to principal:* 50 S. C. 290; 74 S. C. 374.

March 1, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action on a policy of life insurance, issued the 26th of December, 1907, to Joseph B. Huestess, who died on the 9th of August, 1908.

After denying certain allegations of the complaint. the defendant, by way of defense, alleged "that said policy was procured through fraud on the part of Joseph B. Huestess, the insured, said fraud consisting in the following facts, to wit:

"(a) Part 1 of the Application for Insurance, under which said Policy No. 5949 was issued, contains the following agreement on the part of the insured:

"(1) I agree that this application, and the answers made to the medical examiner, in Part II of said application, shall he the basis of the contract between the parties hereto, and shall be conclusive upon any person having or claiming any interest in any policy to be issued. * * *

"(4) That the truthfulness of each statement. is material to the risk, and is the sole basis of the proposed contract.

(Signed)   JOSEPH B. HUESTESS "

"(b) Part II of said Application for Insurance, under which said Policy No. 5949 was issued, contained the following agreement on the part of the insured:

" 'I hereby warrant and agree, that all the aforesaid statements and answers, and all those contained in Part I of this application, are true, and offered to the company as consideration for the policy.

(Signed)   JOSEPH B. HUESTESS.'

"(c) Among the statements and answers in said Part II, so warranted to be true, are the following:

" '(5a) State all diseases or injuries you have had during past five years, that have required medical or surgical treatment.   Ans. None.'

" '(9a) Has any physician at any time expressed the opinion that your urine contained albumen or sugar?   Ans. No.   Q. How long since have you consulted a physician, and for what ailment?   Ans. Not at all.'

"(d) That, as defendant is informed and believes, the answers above quoted, were not true when made, but on the contrary they were false, and so known to the said Joseph

B. Huestess; that the said Joseph B. Huestess had required medical treatment during five years immediately preceding the date of said application; that a physician had previous to the date of such application, expressed the opinion, that the urine of said Joseph B. Huestess contained albumen, or sugar, or both, and that the said Joseph B. Huestess had, previous to the date of said application, consulted a physician.' "

At the close of all the testimony, the defendant's attorneys made a motion for the direction of a verdict, which was granted, and the plaintiffs appealed.

The first question that will be considered is, whether there was error on the part of his Honor, the presiding Judge, in sustaining the following ground, upon which the motion for the direction of a verdict was made:

"Because the undisputed evidence is to the effect that certain material warranties were made by insured, in his application, as a part of the contract, and as the consideration for the issuing of the policy sued on, and is further to the effect that these warranties were false when made, and were at the time known by the assured to be false."

The burden rested upon the defendant to prove that the facts set out in its answer were true. The presiding Judge ruled, that the answer charges conscious fraud. It is admitted, that the answers to the questions were not in the handwriting of the deceased, but were inserted by the physician selected by the defendant to make the examination of the insured.

The presiding Judge, in ruling upon the foregoing ground of the motion, said:

"The only question which could possibly be urged, as one that could be submitted to the jury, is, whether or not the false statements of these answers, the answers to these questions, were put into the application by the insured himself, or were put in there by the agent of the company, or

some one else unknown to him, against his consent and in fraud and deception of him."

The record contains the following ruling of the presiding Judge.

"Mr. LeGrand: We want to show that the knowledge of Mr. Huestess' condition was told to Mr. Fass, and brought on from him to the company, and the company, having known, went on and issued the policy. The Court: Yes, I think it is relevant on the ground to show whether he committed a fraud."

The presiding Judge also allowed the plaintiffs, over the objection of the defendant's attorneys, to introduce testimony for the purpose of showing that the insured sustained a reputation for honesty, uprightness and fair-dealing.

The following appears in the report of the physician who examined the insured: "a. Was the urine examined passed in your presence? Yes. b. Color? Light amber. c. Clear or turbid? Clear. d. Reaction? Acid. e. Sp. gravity? 1,022. f. Does it contain sugar? No. g. Test used? Bismuth and Ly Peless. h. Does it contain albumen? No. Test used? Hect. and acid. k. Have you found it necessary to examine the urine more than once? If so, give particulars. No."

The said physician had known the deceased for sixteen years. Clarence Huestess, son of the deceased, testified as follows:

"State what happened relative to this insurance. Mr. Webster introduced father to Mr. Fass, and he wanted to take out insurance, and father then told him he thought there would be no use, as he had tried before to get out insurance here at Bennettsville, been examined by every physician. And Mr. Fass wanted to know, what was the trouble, and father told him it was kidney trouble, and he told him, then Mr. Fass told him he wanted to give him a chance to get out insurance, that he could get him through

all right, he wanted a chance to get him examined by his physician. Who was his physician? Dr. Hamer, at McColl. What then? He told him he had just gotten a similar case through for a Mr. Gibson of North Carolina of some disease of that kind, and he wanted father to let him examine him, and give him a chance. Mr. Fass told your father? Yes, sir."

Mrs. Maggie B. Huestess testified as follows:

"Do you know Mr. Fass? Yes, sir. When did you first see him? In front of our home. He came to your home? Yes, sir. Well, state what you heard him saying, if anything, concerning insurance? Well, he came in the house to Mr. Huestess, and they were talking insurance, and he asked him to let him insure his life, and he told him there was no use to ask him, because he had been turned down."

There is no direct or positive testimony tending to show that the insured intended to practice a fraud upon the defendant other than the mere inference, arising from the signing of the application for insurance, containing the answers alleged to be false.

The fact that the agent, Max Fass, after being informed that the insured had kidney disease, and had been examined for insurance, and had been turned down by every physician in Bennettsville, should have desired that the deceased be examined by the company's physician, so as to give him a chance for insurance, coupled with the statement that he had just gotten a similar case through for a Mr. Gibson of North Carolina, of some disease of that kind, tends to show that the agent wanted the deceased examined by a physician who would pass him whether he had kidney trouble or not. And, the statement, of the physician in his report to the company that the urine passed in his presence was light amber, in color clear, contained neither sugar nor albumen, and that he did not find it necessary to examine the urine more than once, although the deceased was then and had been for several years suffering from

Bright's disease, tends to show that Fass and the physician had the same object in view. Under these circumstances, the question whether the insured was guilty of conscious fraud should have been submitted to the jury.

The second ground of the motion was as follows:

"Because there is no sufficient evidence to show waiver of any of its rights by the defendant company."

"The burden of proof rested upon the defendant, to show that the policy was forfeited, and when the Circuit Judge decided that the testimony was sufficient to establish that fact, he invaded the province of the jury, it being susceptible of more than one inference." *Madden* v. *Ins. Co.,* 70 S. C. 295, 49 S. E. 855.

"When an insurance company issues a policy and accepts the premium, and there is testimony tending to show that at the time of issuance of policy it had notice that insured was not true owner, this is sufficient to go to the jury, tending to show that defendant is estopped, from claiming the policy was void from its inception, because assured was not sole owner." (Syllabus). *Graham* v. *Ins. Co.,* 48 S. C. 195, 26 S. E. 323.

"The question before us is whether the principal is estopped by conduct, to assert a forfeiture, the assertion of which is inconsistent with the principal's conduct, in accepting the premium and delivering the policy as a valid policy, when if the forfeiture was not intended to be waived such policy would be void in its inception. On this question, we do not see room for two opinions. The knowledge of an agent acquired within the scope of his agency is imputable to the principal." *Gandy* v. *Ins. Co.,* 52 S. C. 224, 29 S. E. 655; *Rearden* v. *Ins. Co.,* 79 S. C. 526, 60 S. E. 1106; *McCarty* v. *Ins. Co.,* 81 S. C. 152, 62 S. E. 1.

"Provisions for forfeiture in an insurance contract are for the benefit of the insurer and may be waived at the insurer's option. The policy is not void for breach of condition, but merely voidable." *Kingman* v. *Ins. Co.,* 54 S. C.

599, 32 S. E. 762; *Modern Woodmen* v. *Vincent,* 14 A. & E. Am., cases 89.

"When an insurance company has a right to cancel a policy, and fails to cancel it and return the unearned premium, either before or after the fire, the jury may consider that as evidence of intention to waive the forfeiture."

"Forfeitures are not favored in the law, and Courts are always prompt to seize hold of any circumstance that induces an election to waive a forfeiture or an agreement to do so, upon which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company which leads a party insured honestly to believe that, by conforming thereto a forfeiture of his policy will not be incurred followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." *Ins. Co.* v. *Eggleston,* 96 U. S. 577; *Arnold* v. *Ins. Co.,* 60 S. E. R. (Ga.) 470; *Norris* v. *Ins. Co.,* 57 S. C. 358.

"If the defendant knew at the time it accepted the premium of insurance and delivered the policy, that E. B. Hollings (the insured) was sick, there is but one inference of which this fact is susceptible, and that is, that the defendant waived the right to insist upon the objection, otherwise. it would be allowed to take advantage of its own wrong." *Hollings* v. *Bankers Union,* 63 S. C. 192, 41 S. E. 90.

"The rule adopted in this State, and the large majority of the States of the Union, is that an insurance company cannot avail itself of provisions in the policy, that it should be void, if certain facts therein mentioned as essential to the issuance, should be found not to exist, when these facts were known to the agent not to exist, when the policy was issued through him, and the existence of such facts, and the knowledge of the agent may be proved by parol." *Pearlstine* v. *Ins. Co.,* 74 S. C. 246, 54 S. E. 372.

"The agent and applicant are not upon equal terms of knowledge. The applicant is generally ignorant, of the powers of the agent and the special rules, by which the solicited contract is to be controlled. The agent is generally expert in these matters, and common honesty and fairness demand, that the applicant is not misled to his injury, by the agents in one kind of an association as well as the other, whether the subject matter of waiver and estopppel relate to the form or the substance of the contract." *McCarty* v. *Ins. Co.*, 81 S. C. 152, 62 S. E. 1.

"The knowledge of an agent acquired within the scope of his agency, is imputable to his principal, and, if an insurance company, at the inception of the contract of insurance, has knowledge of facts which render the policy void at its option, and the company delivers the policy as a valid policy, it is estopped to assert such ground of forfeiture." *Fludd* v. *Assurance Society*, 75 S. C. 315, 55 S. E. 762; *Hankinson* v. *Ins. Co.*, 80 S. C. 392, 61 S. E. 905.

Turning to the testimony, we find it tended to show, that the agent had direct and positive information, that the deceased was laboring under kidney trouble, on account of which he had been refused insurance, when examined by physicians, on former occasions.

But even, if it be successfully contended, that the testimony failed to show he had such a disease, as rendered him an unfit subject for life insurance, nevertheless, it clearly tended to show, that the agent was informed of such facts by the insured as were sufficient to put a reasonably prudent man on inquiry, which, if pursued with due diligence, would have led to the knowledge of the fact, that the insured had Bright's disease, and this is the equivalent of actual notice. *McGee* v. *French*, 49 S. C. 454, 27 S. E. 487.

Applying the principles of the foregoing decisions to the testimony, it is manifest that there was error, in the refusal to submit the question of waiver to the jury.

The third ground of the motion is as follows:

"Because if the testimony as to waiver be true, then it clearly appears, that the alleged agent was acting adversely to his principal, with the knowledge of the insured, and while so acting, notice to him was not notice to the principal."

The proposition therein stated is unsound, for the reason that mere knowledge on the part of the deceased, that the agent was acting adversely to his principal, would not prevent the agent's knowledge from being imputed to the principal, unless the insured participated with a fraudulent intent.

For the same reason the following ruling was erroneous:

"The evidence in this case goes to show that even if this gentleman told the agent, that he had kidney trouble, and the companies had rejected him, and even if the agent knew that fact, and therefore consented, and that the knowledge should have been imputed to the company, when he went on in there and answered these questions as there answered, he became in the law a party to the fraud perpetrated on this company, whereby this policy was obtained."

In that connection the Circuit Judge also ruled as follows:

"As I have already stated, where fraud is perpetrated, the contract is void; now, it might be charged, that he has been defrauded by the insurance company. If that was so, that this party was defrauded by the insurance company's agent and doctor, he would have an action of damages against the company, because the company is responsible for the wilful and fraudulent acts of its agents, but he would not have any action to enforce a contract, void by reason of fraud."

This ruling was also erroneous, for the reason that the principal is bound by the acts of the agent, even when he

is actuated by a fraudulent intent. if he is acting within the scope of his employment.

The rule is thus stated in *Reynolds* v. *Witte*, 13 S. C. 5 : "It is a general doctrine of law, that although the principal is not ordinarily liable (for he sometimes is) in a criminal suit, for the acts or misdeeds of his agents, unless, indeed, he has authorized or co-operated in them, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, negligences, and other malfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases, the rule applies *respondent superior;* and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters, within the scope of the agency."

In stating the reason for this rule Lord C. J. Holt says : "Seeing that some one must be loser by the deceit, it is more reasonable that he, who employs and confides in the deceiver should be the loser, than a stranger." See, also, *Hutchinson* v. *Real Estate Co.*, 65 S. C. 45, 43 S. E. 295.

The fourth ground of the motion is as follows :

"Because the evidence shows, that the warrants alleged to have been waived were such as could not be waived by any agent having no more authority, than the agent in this case has been proven to have had."

The testimony tended to show that the agent exercised the powers usually conferred upon those soliciting insurance. It does not, however, appear from the record that the presiding Judge rested his decision upon this ground.

The fifth ground of the motion was as follows:

"Because the evidence of the alleged waiver goes to prove the waiver of only one of the warrants, proven to be false."

All the warrants in question related to the physical condition of the deceased, and the conduct of the agent tended to show, that the right to insist upon any of them was waived.

Furthermore, the testimony tended to show, that the insured was treated by a physician on two occasions only during his last illness—and about four or five years prior to his death, and that such treatment was for kidney trouble.

The judgment is reversed and the case remanded for a new trial.

Mr. Justice Woods, *dissenting.* In this action by the executors of the will of Joseph B. Huestess on an insurance policy issued on the life of the testator, the Circuit Judge directed a verdict for the defendant, and the plaintiffs appealed. Part one of the application for the policy contained these stipulations, signed by Joseph B. Huestess: "I agree that this application, and the answers made to the medical examiner in Part II of said application, shall be the basis of the contract between the parties hereto, and shall be conclusive upon any person having or claiming any interest in any policy to be issued. * * * That the truthfulness of each statement is material to the risk and is the sole basis of the proposed contract." Part two of the application contained the following agreement, also signed by the applicant: "I hereby warrant and agree that all the aforesaid statements and answers, and all those contained in Part I of this application, are true, and offered to the company as consideration for the policy." The application contained these questions, and the answers to them, which were warranted to be true: "State all diseases or injuries you have had during the

past five years that have required medical or surgical treatment? Ans. None. Has any physician at any time expressed the opinion that your urine contained albumen or sugar? Ans. No. How long since you have consulted a physician and for what ailment? Ans. Not at all." The defense set up was thus stated in the answer to the complaint: "That as defendant is informed and believes the answers above quoted were not true when made, but on the contrary they were false and so known to the said Joseph B. Huestess; that the said Joseph B. Huestess had required medical treatment during five years immediately preceding the date of said application; that a physician had previous to the date of such application expressed the opinion that the urine of said Joseph B. Huestess contained albumen or sugar, or both, and that the said Joseph B. Huestess had, previous to the date of said application, consulted a physician."

The evidence was conclusive that the answers above set out were not true—that Huestess had been treated by a physician a short time before the application was made, and that at least two physicians had expressed to Huestess the opinion that his urine contained sugar. There was no dispute as to the further facts that Huestess had been under the treatment of a physician for Bright's disease not more than two or three years before he stated in his application that he had not been treated for any disease in five years, that these answers were made on the 13th day of December, 1907, and that Huestess died of Bright's disease on the 9th day of August, 1908.

Thus it was shown on the trial that the answers to questions of the utmost importance propounded by the insurance company were untrue to the knowledge of Huestess. Under this state of facts this Court has held that there can be no recovery unless there is some evidence of waiver by the insurer of the misrepresentations or the insurer has so acted as to be estopped from relying on the misrepresenta-

tions.  *Prince* v. *State etc. Ins. Co.,* 77 S. C. 187, 57 S. E.
766; *Gambril* v. *United States etc. Co.,* 83 S. C. 236, 65
S. E. 231; *Kelly* v. *U. S. etc. Ins. Co.,* 84 S. C. 95, 65 S. E.
949.  In the case first cited the familiar rule was laid down
that one who is under no disability cannot allege against his
written contract for insurance on the ground that he neg-
lected to read it.

The sole question, then, is whether there was any evidence
of estoppel or waiver.  On this point the plaintiffs rely on
the testimony of Mrs. Huestess, the widow of Joseph B.
Huestess, that she heard him tell Max Fass, the soliciting
agent of the defendant company, who was asking him to
insure, that "there was no use to ask him because he had
been turned down;" and on the following testimony of
Clarence Huestess, a son: "Mr. Webster introduced father
to Mr. Fass, and he wanted to take out insurance, and
father told him he thought there would be no use, as he had
tried before to get insurance here at Bennettsville, had been
examined by every physician.  And Mr. Fass wanted to
know what was the trouble, and father told him it was
kidney trouble.  Then Mr. Fass told him, he wanted to give
him a chance to get out insurance, that he could get him
through all right, he wanted a chance to get him examined
by his physician."  Although there is no testimony from
any witness on the subject, it seems to have been conceded
at the trial that the answers to the questions in the applica-
tion were written by the examining physician, and signed
by Huestess.  In the absence of any evidence whatever to
the contrary, Huestess must be held to have signed the
application containing the answers from him with full
knowledge of its contents.

The rule has been laid down in this State that an insur-
ance company cannot set up forfeiture on account of facts
known by the agent of the company to be existing at the
time of making the contracts.  *Pelzer Mfg. Co.* v. *Sun Fire
Office,* 36 S. C. 213, 15 S. E. 562; *Pearlstine* v. *Phoenix*

*Ins. Co.,* 74 S. C. 246, 54 S. E. 372; *Fludd* v. *Equitable Society,* 75 S. C. 329, 55 S. E. 762; *Rearden* v. *State M. L. Ins. Co.,* 79 S. C. 526, 60 S. E. 1106. The exception to this rule is that the principal will not be bound by the knowledge of the agent if the agent is acting in fraud of his principal and is aided in his corrupt design by the intentional fraud of the party applying for insurance. *Knobelock* v. *Germania Savings Bank,* 50 S. C. 259, 27 S. E. 962; *State* v. *Talley,* 77 S. C. 99, 57 S. E. 618; 11 L. R. A., N. S. 938n.

The evidence leaves no room to doubt that Max Fass, the agent, intended to perpetrate a fraud on the insurance company in order to get his commission on the policy; but if the case had depended on the issue of fraud alone, the evidence, though strong, may not be so conclusive that Huestess corruptly participated in the fraudulent design of the agent, as to warrant the direction of a verdict for the defendant on the ground. Regarding the evidence as leaving a doubt as to the applicant's participation in the fraudulent design, the testimony of his communication to Max Fass that, on examination for insurance, he had been found to have kidney trouble, was evidence to go to the jury on the point as to whether the defendant company was estopped from claiming a forfeiture on account of the false answer of the applicant that no physician had expressed the opinion that his urine contained albumen or sugar. On that point I yield to the views of the majority of the Court.

But there was not a particle of evidence that the applicant communicated to Fass that he had ever been treated by a physician for kidney trouble or a disease of any kind. Notice of the mere existence of an infirmity sufficient to cause physicians to report unfavorably on an application for life insurance is not notice that the infirmity is so serious that of necessity there must have been surgical or medical treatment. Certainly, it cannot be held to carry such notice in the face of the express written statement and war-

ranty of the individual himself that he had not for five years received medical treatment of any kind. The rights of the plaintiffs can rise no higher than those of their testator. The position that the company was put on such notice by the communication to its agent of the presence of disease as required further inquiry, even if sound, could avail the plaintiff nothing; for the insurance company did make further inquiry in the most formal manner of the defendant himself,—the only person who could know,—and received the written assurance that he had not for five years been treated for any disease. The case therefore falls directly under the cases of *Prince* v. *Ins. Co., Gambrill* v. *Ins. Co.,* and *Kelly* v. *Ins. Co., supra,* holding that there can be no recovery on an insurance policy under such a state of facts as here appears.

On the argument here it was insisted that the defendant had elected to waive the forfeiture by not returning the premium paid by Huestess. The burden is on the party who relies on waiver of the terms of a contract to prove the facts which constitute waiver. *Spann* v. *Phoenix Ins. Co.,* 83 S. C. 262, 65 S. E. 232. Even if the failure to return the premium after the rights of the parties had been fixed would constitute waiver, the plaintiff did not prove nor rely on such failure in the Circuit Court and it cannot be asserted as a fact and made available in this Court.

It seems clear to me that the Circuit Judge was required by the authority of the cases cited and by the express terms of the contract of the parties to direct a verdict for the defendant.

7  March —.  Petition for rehearing refused.