14891

ESKEW v. LIFE INS. CO. OF VIRGINIA

(3 S. E. (2d), 251)

516

*Messrs. C. V. Pyle* and *W. E. Bowen,* for appellant,

*Mr. B. A. Morgan,* for respondent.

June 6, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Amos O. Eskew brought action on a policy of life insurance issued by defendant insurance company by which it insured the life of Mrs. Lurline Eskew, of which Amos O. Eskew, her husband, was the named beneficiary.

The allegations of the complaint showed the issuance of the policy on December 13, 1937; the death of the insured on April 26, 1938; that proofs of death were duly filed, and demand made and payment refused.

For answer, the defendant admitted the issuance of the policy upon faith in the truth of the statements made by the insured in the application; which were by her own signature declared to be true and correct, which statements related to her present and previous health condition, which she alleged was then good; that she had never had cancer and various other diseases named in the application; that she had not been an inmate in any hospital; and that she had not been attended by a physician in the last two years.

That relying upon the truth of these statements and having no information to the contrary, the defendant issued and delivered the policy sued on.

Defendant alleged upon information and belief that in less than three months before the application was signed said Lurline Eskew had not only been an inmate of a hospital and therein treated, but was for several weeks the inmate of hospitals and treated by physicians and operated on for cancer, and died of that disease within four months after the issuance of the policy. That defendant would not have issued the policy if these facts had been known to it, but they were concealed from it to its hurt and injury.

That under the terms and conditions set out in the policy is a condition that the policy shall not take effect if the insured, within two years prior to the date of the policy, had been ill, consulted a physician, or received treatment for any illness or disease, unless such illness or treatment is endorsed on the policy by the company, or unless it was not material to the risk. That within two years prior to the delivery of this policy the insured had been ill, had consulted and been treated by more than one physician for an illness or disease which was material to the risk, and such policy is, because of such facts, void. That as soon as defendant learned of these facts, it declared the contract void and tendered to the plaintiff, the beneficiary, the return of all premiums that had been paid, and it still offers to return them.

That the said contract of insurance was never of force and effect, because when the policy was issued and delivered the insured was not of sound health but was afflicted with a serious malady which caused her death.

It denies all the allegations of the complaint not herein admitted.

The case was heard by Hon. J. Henry Johnson and a jury at Greenville, S. C.

At the conclusion of the testimony for the plaintiff, defendant moved for nonsuit. His Honor said: "I am going to take this matter under consideration and will not rule finally at this time."

At the conclusion of all of the testimony, defendant moved for a directed verdict in its favor on the grounds upon which the motion for nonsuit was based, viz.:

" * * * There is no evidence that any information of her condition was ever communicated to the company other than to Ledbetter (the agent). The application was made in November; the policy is dated December 13th, 1937. It contains this provision: 'This policy shall not take effect if the insured died before the date hereof, but in such event the premiums paid hereon will be refunded.' Now, this par-

ticularly: 'Subject to the provision entitled "Incontestable after 1 year," this policy will be voidable by the company, if within two years prior to the date of this policy, the insured has been ill, consulted a physician, or received treatment for any illness, injury or disease, unless such illness, consultation or treatment is endorsed on this policy by the company (which endorsement may take the form of a photostatic copy of the application) or was not material to the risk. If this policy is so voided by the company, the premiums paid hereon will be refunded.'

"Now going back to the well-established principle, my second ground, if your Honor please, taking the testimony of the plaintiff to be true for the purpose of the motion, that the condition of the insured was communicated to Ledbetter, that Ledbetter said that he was interested in a trip and that he wanted to get all of the insurance that he could, because the one who got the most got the trip. My position is that that testimony shows that at that particular moment, with that knowledge to Ledbetter, with that interest on the part of Ledbetter, that that constitued a personal matter of Ledbetter's and for the moment he stepped aside from the duty he owed his principal and was acting for himself. In other words, your Honor, if that is true it was a fraud against the Life Insurance Company of Virginia, because as I said in the grounds for the other motion, there is no testimony that that condition was ever communicated to the company."

The plaintiff also moved for a directed verdict in his favor on the ground that all the facts relating to the physical condition of the insured were known to Ledbetter, the agent of the defendant, and his knowledge is imputable to the company.

The Court refused the motion of the plaintiff, and granted that of the defendant.

The plaintiff appeals upon five exceptions, which he says in his brief make two questions, to wit: 1. Error in directing verdict for defendant. 2. Error in refusing to direct verdict for plaintiff.

We think that the exceptions make two questions for our consideration:

1. Was defendant required to plead the fraudulent conduct of the insured and the agent of the company?

2. Is there evidence that the insured participated with the agent in perpetrating the fraud by which the policy was procured?

It is undisputed that Mrs. Lurline Eskew, the person insured, was, at the time the application was written and at the time the policy was issued, in unsound health. That within two years prior to that time she had been ill, had been treated by physicians, had been an inmate of two hospitals, where an operation had been performed on her for a cancerous growth, by which one of her breasts was removed. That when Ledbetter, the agent of the company, asked her to let him write a policy for her, he told her that he was trying to win a trip to Richmond; it would go to the one who wrote the most insurance. She told him: "I don't think mine will pass. I have been operated on for a tumor, they told me at the hospital they thought it was a tumor, and if it was a tumor they would not have to take my breast off, but if it was a cancer they would have to remove my breast, and said they did." "Q. And what was it he said? A. He said I can fix all that with the company, * * * you are mighty stout and healthy looking for anything to be wrong with you. * * * She signed it (the application). She did not read it over. She just signed." "She told him she had been in the hospital twice, General and St. Francis, with the same complaint. She was in bed two months before she died."

Mrs. Medlin, daughter of the insured, a witness for plaintiff, testified on cross examination: "Q. You say Mr. Ledbetter stated that he was interested in a trip and, therefore, he wanted to get your mother's insurance, regardless of her condition? A. Yes, sir."

On direct examination, the same witness said: "My mother told Mr. Ledbetter she had been in two hospitals. * * *

Mr. Ledbetter was doing the writing. He asked the questions and she answered them. She did not read the application, she signed it."

The following extracts from the application are set out in the transcript of record:

" * * * Q. When last sick? A. Never. Q. What disease? A. None. Q. Has the person to be insured ever had * * *. cancer or other tumor? A. No. Q. Ever been under treatment or an inmate of any dispensary, hospital, asylum, almshouse, or other institution? A. No. Q. Been attended by a physician within the past two years? A. No. Q. If yes, for what diseases? A. None. Q. Names of physicians? A. None.

*      *      *

"I declare that the questions above were duly asked me and that the answers above are complete, true and correctly recorded * * *. *I understand and agree that no agent has authority to permit me to withhold information or to answer any question falsely;* * * * that any policy which may be granted by the company on this application shall be accepted subject to its terms; * * *." (Italics added.)

The answer clearly set up the defense of the conduct of the company's agent and that of the insured, aiding and participating therein, which constituted fraud, which entitled defendant to avoid the policy. It is not necessary that the language used should be "fraud," if it means fraud, it is sufficient. Respondent's counsel frankly states that in ordinary circumstances, it is best to set out and plead fraud, but that there are exceptions to the general rule and that the facts of this case constitute such exception.

The facts which show the fraud were unknown to defendant until they were brought out at the trial by plaintiff and by his own witnesses. It is true that defendant, when these facts appeared, might have moved the Court to amend its answer by alleging the facts thus dis-

closed, but how has plaintiff been harmed or misled by the failure to do so? Plaintiff was already aware of, in fact had put in evidence himself, the proof of the facts which the amendment to the complaint would allege. It would have been an idle gesture. There was no need for the amendment, if it had been asked for and the request granted.

If the plaintiff in making out his case in chief, puts in evidence facts which go to prove defendant's case, defendant may avail itself of that evidence in support of its own case, even though it may not have pleaded it.

The rule is thus laid down in 21 R. C. L., 535: " * * * When the evidence of the plaintiff in support of his case discloses a perfect defense, whether the same is equitable or legal, he will be deemed to have waived the defect arising from want of averment thereof in the answer, and the defendant may have the benefit of such defense. This is especially true where the defendant previous to the trial had no information which would enable him to plead the defense in his answer."

How strikingly apt is this quoted rule of law to the facts in this present case. The facts under discussion in the present case were purposely withheld from the knowledge of the defendant by its agent in pursuit of his purpose to perpetrate a fraud against the principal in his own interest.

"A person who is wholly ignorant of facts from which the presumption of constructive notice arises does not have 'constructive notice' of such facts." (Syllabus.)

"It seems plain that one cannot be held to have constructive notice of facts from which the presumption of notice arises, who is wholly ignorant of those facts, and a knowledge of which is the necessary influence of his conduct, or actions in the premises." *Williams v. Jefferson Standard Life Ins. Co.*, 187 S. C., 103, 196 S. E., 519, 524.

In the case of *Charleston & W. C. Railway Co. v. Devlin*, 85 S. C., 128, 67 S. E., 149, 150, the railway brought action against the defendant for breach of contract. The jury

found for the defendant, and plaintiff appealed. The following is taken from the opinion in the case:

"The first exception assigns error as follows: 'Because the presiding Judge erred in allowing the defendant to introduce evidence tending to establish fraud and misrepresentation when a defense of this character is not properly pleaded in the answer.'

\*       \*       \*

"In the first place, even in a *law* case, the court has a right, when an instrument of writing is introduced in evidence, although it was not mentioned in the pleadings, to declare it null and void in so far as that action is concerned. *McKenzie v. Sifford,* 45 S. C., 496, 23 S. E., 622.

"In the second place, the testimony was admissible for the reason that misrepresentation and deceit are elements of fraud. *Baldwin v. Cable Co.,* 78 S. C., 419, 59 S. E., 67; *Brown v. Tel. Co.,* 82 S. C., 173, 63 S. E., 744."

In the present case, the defense alleged that the application signed by the insured contained statements which she declared to be true, and defendant, relying upon the truth of them, issued the policy. That in the application, and as an inducement to issue the policy, she stated that she was then in good health and that she had never had cancer and other diseases named; that she had not been under treatment in, nor an inmate of, any hospital and that she had not been attended by a physician within the past two years. The defendant alleges that within two years prior to the date of the policy the insured had been ill, consulted more than one physician, and received treatment for an illness and disease which was material to the risk. That when the policy was dated and delivered, the insured was not in sound health, but was afflicted with a serious malady, which finally caused her death.

It is not necessary to plead fraud *in haec verba.*

It was said in the *Devlin case,* just above cited, that deceit and misrepresentation are elements of fraud. Not the most

technical critic of the use of the English language will deny that the answer in this case abounds with allegations of "deceit and misrepresentation."

"A defendant is not required to say in specific language that he denies this and that allegation of the complaint." (Syllabus.) *Whetsell v. W. O. W.*, 188 S. C., 106, 198 S. E., 153.

If plaintiff wanted more specific allegations, he should have moved to make the answer more specific and definite. These exceptions are without merit.

The language taken from the record of the transactions between the insured and Ledbetter, the agent of the defendant company, is a complete answer to the exceptions that there is no evidence of intentional fraud on the part of the insured.

Along with this contention may be considered that which seeks to hold that the fraud of the agent, Ledbetter, is attributable to the defendant company.

To hold that the insured did not know that the agent, Ledbetter, when he was apprised by her of the fact that she had been in two hospitals and that her breast was removed because she had cancer, and said "We can fix that all right with the company," meant to deceive and defraud the company by withholding this information from it, is to write her down a fool, whereas the whole record, in which she figures, shows that she was an acute woman, perfectly aware of what she and he were doing. He read the questions and she gave the false answers, well knowing as a matter of common sense that the only purpose of the false answers was to deceive the company and thus obtain the insurance policy. Can there be a doubt that this was conscious fraud on her part?

When Ledbetter read the questions, she gave the false answers; he wrote them down and she signed them and attested that they were true. Can any one suggest a more complete proof of participation by two persons in a fraudulent

scheme for the benefit of the two? We dismiss the contentions of the plaintiff as being without any merit.

Can the fraud of the agent, Ledbetter, be attributed to the defendant company? Or, rather, can the company be held to have knowledge of the fraud because Ledbetter knew it?

It is not necessary to stop to discuss the postulate that ordinarily the acts of the agent, done in the line of his employment, are imputable to his employer. That is to say, ordinarily the information known to the agent is imputable to the principal.

There is, however, a notable exception equally well accepted.

In the case of *Ex parte Mercer*, 129 S. C., 531, 125 S. E., 33, this Court said: "Ordinarily notice to agent is notice to principal, but such rule does not apply where knowledge was obtained by agent engaged in perpetrating fraud on principal." (Syllabus.)

In the case of *Ayers v. Business Men's Ins. Co.*, 148 S. C., 355, 146 S. E., 147, 149, there was an action on an insurance policy. The Circuit Judge directed a verdict for the defendant on the grounds that (1) There was collusive fraud on the part of the agent of the insurance company and the beneficiary in the insurance of the policy, and (2) that the policy was void under its own terms because at the time of the application and issuance of the policy the insured was not in good health. The opinion of this Court on appeal was by Mr. Justice (afterwards Chief Justice) Blease, who said:

"In this appeal by the plaintiff from the directed verdict against him, the contention is made that the agent's knowledge of the ill health of the insured estops the company from asserting the forfeiture; and therefore the case should have been submitted to the jury for determination.

"In presenting their position, appellant's counsel rely upon the authority of *Reardon v. Insurance Co.*, 79 S. C. (526), 529, 60 S. E., 1106; *Huestess v. Insurance Co.*, 88

S. C., 31, 70 S. E., 403, and *Rogers v. Insurance Co.*, 135 S. C., 89, 133 S. E., 215, 45 A. L. R., 1172. The main principle stated in the cited cases has been so long recognized by this Court that it is no longer open to question. That general principle, as announced in one of the syllabi of the *Huestess case,* is this: 'A principal is bound by the act of his agent even where he is actuated by a fraudulent intent, if he is acting within the scope of his employment.'

"But it is recognized in the *Huestess case* that the company should not be bound by the agent's knowledge when the insured, or the person acting for the insured, participated in the fraud. The majority opinion of the court on this point seems to be in full accord with the opinion of Mr. Justice Woods (who dissented on other grounds), where the rule, together with the exception that seems applicable to the present case, is concisely stated as follows: 'The rule has been laid down in this State that an insurance company cannot set up forfeiture on account of facts known by the agent of the company to be existing at the time of making the contracts. *Pelzer Mfg. Co. v. Sun Fire Office,* 36 S. C., 213, 15 S. E., 562; *Pearlstine v. Phoenix Ins. Co.,* 74 S. C., 246, 54 S. E., 372; *Fludd v. Equitable Society,* 75 S. C., 329 (315), 55 S. E., 762; *Rearden v. State M. L. Ins. Co.,* 79 S. C., 526, 60 S. E., 1106. *The exception to this rule is that the principal will not be bound by the knowledge of the agent if the agent is acting in fraud of his principal and is aided in his corrupt design by the intentional fraud of the party applying for insurance. Knobelock v. Germania Savings Bank,* 50 S. C., 259, 27 S. E., 962; *State v. Talley,* 77 S. C., 99, 57 S. E., 618, 11 L. R. A. (N. S.), 938n [122 Am. St. Rep., 559].' (Italics ours.)

"We do not find anything in the *Rearden* and *Rogers cases* which conflicts with the exception to the rule laid down in the *Huestess case,* which we have italicized above.

"It appears from the evidence that the beneficiary, tempted by the suggestion of the agent that a small policy on his

sister's life could be written up without examination, stood by while the agent filled in false answers and forged the name of Mrs. Mims to the application. Coupled with the forged application was the fraudulent certificate of the agent that he had personally seen and questioned the applicant and recommended the risk. The plaintiff's own testimony, showing that the issuance of the policy was procured in this manner, stamps the scheme of taking out the insuranc̊e as fraudulent from its very inception. And his testimony also showed that he knew what the agent was doing and aided therein. As soon as the company found out how it had been imposed upon, it offered to return the premiums received by it."

From the case of *Knobelock v. Germania Sav. Bank,* 50 S. C., 259, 27 S. E., 962, 973, we take the following, which refers to the exception to the rule that the knowledge of the agent is imputable to the principal: " * * * Under the operation of this reason what are sometimes called exceptions or qualifications to the rule have grown up. For example, * * * knowledge acquired while acting for himself or for a third person, and not for the principal (same authority), or where the knowledge is such that, according to human nature and experience, the agent is certain to conceal, or where the agent is acting in an adversary relation to the principal, or mediates a fraud against his principal or some third person in his own interest, which would be defeated by disclosure. * * * "

This policy is void by its own terms. There can be no particle of doubt that the insured knew that she was not in sound health when she signed the application. She knew that she had been operated on for cancer and that she had been ill, had been treated by physicians and had been an inmate of two hospitals. Yet, in her application she denied all these things and certified that her answers were true. She added: "I declare that the questions above were

duly asked me and that the answers above are complete, true and correctly recorded. * * * "

Along with the agent, she joined in his scheme to defraud the company by saying: "I certify that the above answers are in my own handwriting and that the signature of the applicant or person examined (inspected) was written in my presence * * *."

She distinctly states in her application: "I understand and agree that no agent has authority to permit me to withhold information or to answer any question falsely; * * *."

Now she made all of these things a part of the contract of insurance when she signed the application which is made a part of the contract by the law: " * * * that any policy which may be granted by the company on this application shall be accepted subject to its terms; * * *."

From the *Ayers case, supra,* we take the following: " * * * The plaintiff's own testimony, showing that the issuance of the policy was procured in this manner, stamps the scheme of taking out the insurance as fraudulent from its very inception. * * * "

The order of the Circuit Court, in directing a verdict for defendant on the ground of collusion and fraud, was sustained.

In the present case the insured knew the fraud which the agent intended to perpetrate on the company, and participated with him in accomplishing it. The insured applied for and got the contract of insurance. She is bound by its terms. It contains this provision: "Subject to the provision entitled 'Incontestable after 1 year,' this policy will be voidable by the Company if, within two years prior to the date of this Policy, the Insured has been ill, consulted a physician, or received treatment for any illness, injury, or disease, unless such illness, consultation or treatment is endorsed on this Policy by the Company (which endorsement may take the form of a photostatic copy of the application)

or was not material to the risk. If this Policy is so voided by the Company, the premiums paid hereon will be refunded."

It is not denied that the illnesses, consultations or treatments were not endorsed on the policy; nor will it be denied that the illness (a cancer) was material to the risk. When the company learned of the fraud that had been practiced on it, it declared the contract void and tendered the premiums which had been paid back to the beneficiary, who refused them.

In view of all of the circumstances disclosed in this case, it seems to be unnecessary to discuss the questions of waiver and estoppel suggested by appellant.

The company could not be held to have waived any of its rights in the light of the established fact that it was in utter ignorance of the fraud which had been perpetrated against it when the policy was dated and delivered.

This statement applies with equal force to the suggestion of estoppel.

We find no merit in the exceptions. All are overruled.

The judgment is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE PHILIP H. STOLL concur.

MR. JUSTICE CARTER did not participate on account of illness.