16545

WEST v. SERVICE LIFE & HEALTH INS. CO.
(66 S. E. (2d) 816)

*Messrs. Harris & Harris* and *Watkins & Watkins,* of Anderson, *for Appellant,*

*Mr. W. Harper Welborn,* of Anderson, *for Respondent,*

*Messrs. Harris & Harris* and *Watkins & Watkins,* of Anderson, *for Appellant, in reply,* 

September 25, 1951.

TAYLOR, Justice.

This action was commenced in the Court of Common Pleas for Anderson County for actual and punitive damages arising out of the alleged fraudulent breach of a contract of insurance.

The testimony shows that appellaant had issued its policy of insurance upon the life and health of respondent which set forth certain payments in the event of hospitalization and provided that, if such hospitalization occurred within the first six months of the life of the policy, the insured was to receive one-half of the amount set forth in the policy; that upon August 1, 1949, which was within the six months period, respondent was admitted to the Anderson County Hospital, where she remained for twenty-three days, for which under the terms of the policy she was entitled to $2.50 per day and $20.00 for surgery, making a total of $77.50. On September 8, 1949, respondent returned to her home from the hospital, having assigned to the hospital her interest in the insurance policy. The testimony further shows that appellant's agents would from time to time adjust such claims as were presented by making payments from the amounts of money collected on their routes to claimants and in turn present their receipts at the office where they would be reimbursed for such amounts as had been paid out. Ap-

pellant's agent who last collected the premiums on this policy presented to appellant a receipt purported to have been signed by respondent dated September 9, 1949, for the sum of $87.50, and thereafter on September 16, 1949, presented another receipt purportedly signed by respondent for the sum of $38.50, both amounts being paid to the agent. There is no record of anything further being done by either party until eight or ten months later when another agent for claimant called upon respondent, soliciting business, and was told that she had not been paid what was due her under the policy which she previously had with this company. The agent thereupon instituted an investigation and found that the receipts purportedly signed by respondent were filed in the Home Office and that there was outstanding at the Anderson County Hospital a bill against the respondent for the sum of $259.15, which had attached thereto respondent's assignment of the insurance policy herein referred to. In the meantime appellant's agent, who, prior to and at the time of respondent's hospitalization, was collecting insurance premiums weekly, ceased calling for the premiums and respondent testified that she had not seen him since returning from the hospital.

At the conclusion of all the testimony, appellant's counsel made a motion for a directed verdict in favor of the plaintiff for $77.50 with interest and costs, which was granted, and moved further for a directed verdict in favor of the appellant as to punitive damages. The latter motion by appellant was denied and the question submitted to the jury who found for respondent in the sum of $77.50 actual damages, as ordered by the court, and $490.00 punitive damages, from which appellant moved for judgment *non obstante veredicto* as to punitive damages or for a new trial in the alternative. This motion was also refused.

Appellant now comes to this Court upon a number of exceptions which counsel stated in oral argument present the one question of whether or not the court committed error

in refusing appellant's motion for judgment *non obstante veredicto* as to punitive damages.

When the premiums were no longer paid on respondent's policy, which carried death benefits as well as hospitalization, etc., the policy was of course lapsed. Up to this time, appellant's agent had collected the premiums as they became due by calling at respondent's home. Thereafter, he no longer made such calls but apparently forged respondent's name to receipts which were for amounts purported to have been paid respondent under the provisions of the policy and converted the funds to his own use; at least, it is not contended that any amount has been paid respondent.

" 'It is a general doctrine of law that although the principal is not ordinarily liable (for he sometimes is) in a criminal suit, for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in them, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, negligences, and other malfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in, or indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases, the rule applies *respondeat superior;* and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of the agency.' In stating this reason for this rule Lord C. J. Holt says: 'Seeing that some one must be loser by the deceit, it is more reasonable that he who employs and confides in the deceiver should be the loser than a stranger.' " *Huestess v. South Atlantic Life Insurance Company,* 88 S. C. 31, 70 S. E. 403, 407. See

also *Eskew v. Life Insurance Company of Virginia*, 190 S. C. 515, 3 S. E. (2d) 251.

In the case of *Sullivan v. Calhoun*, 117 S. C. 137, 108 S. E. 189, this Court quoted with approval the following from 12 R. C. L. 229: "Fraud assumes so many hues and forms, that courts are compelled to content themselves with comparatively few general rules for its discovery and defeat, and allow the facts and circumstances peculiar to each case to bear heavily upon the conscience and judgment of the court or jury in determining its presence or absence. While it has often been said that fraud cannot be precisely defined, the books contain many definitions, such as unfair dealing; the unlawful appropriation of another's property by design."

See *Winthrop v. Allen*, 116 S. C. 388, 108 S. E. 153, 155, which also states the well established rule that "where a breach of contract is accompanied with a frudulent act, punitive damages are recoverable, but not for a breach unaccompanied by fraud." See also *Daniel v. Post*, 181 S. C. 468, 187 S. E. 915; *Welborn v. Dixon*, 70 S. C. 108, 49 S. E. 232; and *Moody v. Stem*, 214 S. C. 45, 51 S. E. (2d) 163.

Upon trial of the cause, appellant offered in open court to reinstate the policy as evidence of its good faith and contends that by reason thereof punitive damages should be disallowed. We are of the opinion, however, that the Trial Judge committed no error in submitting this question to the jury for its consideration and that the judgment of the trial court should be affirmed; and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES, and OXNER, JJ., concur.