14960

NEELY v. INDUSTRIAL LIFE & HEALTH INS. CO. OF ATLANTA

(5 S. E. (2d), 568)

January, 1939.

*Messrs. Tobias & Turner* and *Hemphill & Hemphill,* for appellant,

*Messrs. Hamilton, Gaston & Hamilton,* for respondent,

November 6, 1939.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The facts out of which this action arose, briefly stated, are these: On August 16, 1937, the defendant company, upon application of Liza Neely, the plaintiff herein, issued to her a policy of insurance, under the provisions of which the company agreed, in consideration of a weekly premium of ten cents, to pay to the beneficiary named, upon the death of the insured, the sum of $48.00. The age of Liza was stated in her application as being fifty-five years and was so written in the policy.

Some time during the month of April, 1938, about thirty-seven weeks after the policy was issued, C. C. Evans, an inspector for the insurer, accompanied by another agent of the company, went to the home of the insured for the purpose, as he stated to her, of checking her records to see if they were true and correct. She co-operated with him in doing so by letting him see the papers in her possession. She told the inspector, upon inquiry by him, that she was sixty-four years of age, and he then stated to her that it was down wrong in the policy, and advised her what the company would do and would not do in such a case. It also appears that the possibility of her securing, in the circumstances, "old age security," was referred to by Evans, all of which resulted in the insured turning over to him her policy and receiving from him a check for $3.70, which represented the premiums paid by her for thirty-seven weeks at ten cents per week.

This action, in which both actual and punitive damages were sought, was brought in July, 1938. The complaint alleged, among other things, that "the said agents advised the plaintiff * * * that the company would not have to pay at the death of the insured the amount named in said policy since the insured, Liza Neely, had reached the age of sixty-five years and could and should now draw an old

age pension from the State Government and the Federal Government, and Liza Neely was told that she must now give up the policy and accept in lieu thereto the premiums which had been paid." It was further alleged that "the said agents also stated it was provided in the policy the defendant had a right to take the policy up and out of the hands of the insured at any time the company saw fit, provided the company refunded the paid-in premiums. The said agents also advised the plaintiff the policy recited that her age was fifty-five, when, as a matter of fact, she was much older, and upon being told by the plaintiff that the correct age, or as near so as could be ascertained, was given to the defendant when the insurance policy was applied for, and that if there was a mistake in the policy as to age, it was the fault of the defendant's agents who sold the insurance and not because false information had been given (by) the plaintiff, but the said agents still accused the plaintiff of fraud and said she would be given trouble if the policy was not surrendered. Whereupon, plaintiff agreed to surrender said policy and in pursuance to said agreement the policy was thereupon taken from the plaintiff and cancelled unlawfully"; and that "the defendant did thereby deprive the plaintiff in a highhanded and willful manner of all of the benefits of the said policy contract at a time when the health of the plaintiff was bad, and the defendant did deprive the plaintiff of all rights in said policy and took possession of the policy and wrongfully and illegally repudiated and cancelled the said contract by fraud and by threats and by force and by deceit."

The defendant, answering the complaint, admitted the execution and delivery of the policy, but alleged that the application upon which the insurance contract was issued, as well as the policy itself, stated that the age of the insured was fifty-five years; "that some time subsequently thereto the defendant, in accordance with its custom and as it had a right to do, sent an inspector, or representative, of the

company to the home of the plaintiff, who ascertained from the insured, the plaintiff herein, that, instead of the insured being fifty-five (55) years of age, the insured, the plaintiff herein, was of an age actually beyond the year, or age, when the defendant wrote any contracts of insurance, and for that reason was uninsurable."

The case was tried in January, 1939; the jury awarded the plaintiff $30.00 actual and $500.00 punitive damages, and from judgment entered this appeal was taken.

The Court refused to direct a verdict for the defendant, as to either actual or punitive damages, the grounds of the motion, succinctly stated by counsel, being as·follows: "That the policy itself provided that if the age of the insured, as stated in the contract, was not correct no greater amount would be paid than the premium would have purchased at the true age, and that if such true age was actually over fifty-five the company would not be liable for a greater amount than the premiums paid on the policy; that the un-contradicted testimony was that the insured was over sixty-five years of age and in no event could have received a greater sum than already she had received, and in considera-tion for which the defendant-insurer had been released"; and "that the defendant was guilty of no actionable fraud, for the reason that, according to the testimony, there had been no material false misrepresentations and, further, that there had been no reliance on the part of the insured upon any alleged misrepresentation, and that, hence, there was no basis for any punitive damages."

As to actual damages, counsel for the appellant argue that the refusal of the trial Judge to direct a verdict on the first ground of the motion was error, for the reason that the provision of the policy relied on "could and can have but one effect whatever may have been the age of the insured plaintiff stated in the contract"; and that it is "immaterial under the circumstances of this case—there being no ques-tion of the application of any incontestability statute or pro-

vision—whether the policy recited the true age of the plaintiff at the time of its issuance, or the age thereon appearing." as "the plaintiff seems to us clearly bound by the contract and particularly by the provision noted," the scheme of benefits therein provided contemplating an adjustment of such benefits on the basis of the true age of the insured.

We quote the exact language of the policy as to misstatement of age: "If the age of the insured as stated herein is not correct, then no greater amount shall be paid than the premium hereon would have purchased at the true age entry, and if such true age at entry was over 55 years the company will not be liable for a greater amount than the premiums paid on this policy, and the beneficiary hereunder shall be bound by the provisions of this clause."

In refusing the defendant's motion, the trial Judge held that this provision of the policy, under his construction of it, only applies where the insured misleads the insurer by misrepresenting the facts as to his age. He charged the jury, therefore, in accordance with his interpretation of the contract, and about which there is no complaint, that if the plaintiff "at the time of securing the policy misrepresented her age, and misled the company as to her age, then she cannot recover in this action either actual or punitive damages. But if the insurance company knowing that she was beyond the age limit, fifty-five, as named in this provision, knowing it, nevertheless issued the policy, the insurance company is bound by it, because it is construed to be a contract between the parties. And if such a contract is breached by the defendant, actual damages would flow therefrom."

There was testimony that some time in August, 1937, one J. I. Ratteree, an agent of the defendant company, who had known the plaintiff for a number of years, went to her home and secured her application for a policy of insurance, there being with him one G. Noe, another agent of the insurer. The plaintiff testified that when asked by Ratteree at the time what her age was she told him she "was sixty-four

years old, past"; and that when the policy was brought to her by Noe, the other agent, about two weeks later, she put it away and continued to pay the premiums until in April, 1938, when Mr. Evans, another agent of the company, came around and took it up. She further testified that Evans asked for the policy and that she showed it to him, and that he inquired what her age was and she told him that she "was sixty-four years old, past, when I give in my insurance": that he then said my age was put down in the policy as fifty-five, and that "I would have to give up the policy and go on the old-age pension; that the company couldn't carry us no further; if we stayed in, we wouldn't get any more at our death than we put in there; there would be no minimum put on it at all; we would have to get out and get the old-age pension; we couldn't get it if we stayed in the insurance"; that he told her this was in the policy and that she believed what he said about it, and that Mr. Noe was present and heard what was said. Upon being further questioned, she repeated that Evans told her that she couldn't get the old-age pension unless she gave up the insurance, and that she believed it was in the policy, as he said it was; and that she then, believing what he said, turned over the policy to him, and he gave her a check for $3.70.

Both Ratteree and Noe testified that plaintiff had stated at the time the insurance was solicited that her age was about fifty-four. Evans admitted that when he was at the home of the insured in April, 1938, and learned that she was nearly sixty-five years of age, something was said by him in regard to her being eligible for old-age pension, but denied that he made the remarks attributed to him by her.

We think the contention made is without merit. Under the holding of the trial Judge as to the proper construction of the provision of the contract relied on by the appellant, as we have already indicated, the evidence required the submission of the question of actual damages to the jury. As is seen, the testimony is in conflict,

not as to how old the plaintiff was, but as to how old she told the defendant's agent she was at the time he solicited the insurance. The question of fact for the jury's determination, therefore, as made by the evidence, was whether the insured misled the company at the time the insurance was solicited by misrepresenting the facts as to her true age, or whether the company's agent knew, which would be knowledge of the insurer, that she was then more than fifty-five years old, the age limit beyond which no such insurance was issued by the company; and whether, of course, under all the evidence, the contract was breached by the defendant.

In this connection, counsel for the appellant suggest in their argument that it was the plaintiff's duty to read the policy or to have it read to her; that she had full opportunity to do so, and that her failure to perform such duty precludes a recovery. While it is true, as disclosed by the evidence, that the insured cannot read, she is a woman of some intelligence; and were such a question properly before the Court, it would present an interesting, if not a serious, issue as to her negligence or gross negligence, if any, in failing to have read to her the contract of insurance. It was not raised, however, in the Court below as the ground of a motion for a nonsuit or for a directed verdict, nor was the trial Judge asked to rule upon it at any time or in any way; it is mentioned for the first time in the printed brief of the appellant. Such question, therefore, is not, and could not properly be, raised by any exception. Hence, the Court declines to consider the suggestion made.

As to punitive damages : According to the testimony of the plaintiff, a part of which we have set out above, she disclosed her true age at the time she applied for the insurance and the company issued the policy with full knowledge thereabout; that about eight months thereafter, when she was no longer in good health, an inspector for the insurer, one of its agents, came to her home and, upon being told by her that she was nearly sixty-five

years of age, made certain representations to her as to the contents of the policy contract; and that she, believing such representations to be true, and relying upon same, was induced thereby to part with the possession of her policy, which at the time she turned over to such agent, and was thus deprived of her insurance. An inspection of the policy discloses that it does not contain any such provision or provisions as the plaintiff testified that the company's inspector or agent told her it did contain, and which caused her to part with its possession. Under this testimony, and the reasonable inferences to be drawn therefrom, we are constrained to hold that the question as to whether there was a fraudulent breach of the contract by the insurer, accompanied by a fraudulent act on its part, was one of fact for the jury, and that the issue as to punitive damages was properly submitted to them.

The appellant also charges the trial Judge with error in refusing its motion to strike out the testimony of the plaintiff that Evans, an agent of the insurer, had represented to her "that the policy contract contained references to social security benefits," the alleged error being that this testimony was not responsive to any allegation of the complaint. Counsel for defendant argue that it "furnished the only possible basis for a claim of fraud and the only possible logical foundation for an award of punitive damages," and that, therefore, it was clearly prejudicial and should have been stricken on the ground named.

With regard to this contention, while it is true that the plaintiff's allegations, as to whether the agent Evans told the insured that the policy contained provisions as to old age pension—social security benefits—are not as clear and certain as they might have been, we think the complaint, when liberally construed, as it should be, sufficiently alleged this as a fact. The motion, therefore, to strike from the record the testimony admitted in proof thereof, was properly overruled.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.

MESSRS. JUSTICES BONHAM and BAKER concur in part and dissent in part.

MR. JUSTICE CARTER did not participate on account of illness.

MR. JUSTICE BAKER (concurring in part, dissenting in part):

The facts as set out in the opinion of Mr. Chief Justice Stabler are accurately stated with one exception. The opinion states that according to the testimony respondent was no longer in good health at the time of the cancellation of the policy. A careful reading of the testimony discloses respondent testified that at the time the case was being tried (January, 1939), she could not make the statement that she was in "sound good health in every way." The policy was cancelled in April, 1938, approximately nine months prior to the trial. There is no testimony tending to show the condition of respondent's health at the time the policy was cancelled.

Notice to the agent of appellant was notice to it, and appellant was bound by his knowledge. *Eskew v. Life Ins. Co. of Virginia*, 190 S. C., 515, 3 S. E. (2d), 251. For this reason, I concur in the opinion of the Chief Justice as to actual damages, there having been a wrongful cancellation of the policy of insurance. But I am unable to concur in that portion of the opinion which holds that there was testimony sufficient to take the case to the jury on the question if there was such a fraudulent breach of the contract accompanied by a fraudulent act as would warrant the award of punitive damages.

Here a field agent of appellant insurance company is making his visit among the agencies for the purpose of checking upon the policies appellant had issued, and finds that a policy had been issued to a woman admittedly over the age at

which the appellant insures. It was his duty to take some action thereabout. Of course, as it develops, appellant in the handling of this matter should have resorted to a proceeding under Section 7987, Code of 1932. Appellant's field agent did not so proceed, but obtained a surrender of the policy (and refunded respondent all premiums she had paid thereon) by telling her she would have to give up the policy and go on the old-age pension; that the company could not carry her any longer, and that if she retained the policy her beneficiary could not get any more at the time of her death than the amount she had thus paid to the company by way of premiums, and that she could not get old-age pension if she retained the insurance. She further stated that she believed that such provisions were in the policy of insurance.

Under the *terms* of the policy no *material misrepresentation* was made, because if the insurance continued in force until the death of the insured, her beneficiary ordinarily could not have recovered more than the amount which had been paid in by way of premiums; and certainly under no circumstances an amount greater than $48.00, the face of the policy. The statements testified to by respondent as having been made to her by the agent of appellant, and which we have set out above, were not such *material misrepresentations* in the light of the provisions of the policy as to be the basis for an action for damages for the fraudulent breach of the contract accompanied by an act of fraud. Under the terms of the policy the respondent was entitled to $3.70, the amount of premiums which had been paid by her, and this sum she received at the time of the surrender of the policy.

It is conceded that the insured's age was sixty-five at the time of the application for insurance. She was then beyond the age for insurance. Therefore, even though the appellant took up her policy and cancelled it, this was no ground for punitive damages on the ground that she could not obtain

other insurance. The appellant paid her for the amount it claimed was due under the policy as disclosed by the inspection, but appellant being bound by the knowledge of its agent, she was entitled to actual damages for the wrongful cancellation of the policy, and the verdict gives her actual damages.

Accepting respondent's testimony at its face value (which must be done on motion for a directed verdict on behalf of appellant) the only fraud in the case was perpetrated by appellant's agent on it at the time of the application for insurance.

For the foregoing reasons in my opinion, a verdict as to punitive damages should have been directed.

MR. JUSTICE BONHAM concurs.